**McCASKEY REGISTER CO. v. MANN et al.**
(No. 6588.)

(Court of Civil Appeals of Texas. Austin. April 18, 1923. Rehearing Denied May 17, 1923.)

**1. Commerce ⬳40(1) — Sale of bookkeeping system by local agents of foreign corporation held "interstate commerce."**

Sale by local agents of foreign corporation of McCaskey register system for bookkeeping *held* interstate commerce, not requiring filing of articles of incorporation in office of secretary of state to procure permit as prerequisite for bringing action within state, under Rev. St. arts. 1314–1321, notwithstanding transaction involved installation, which was mere incidental agreement.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

**2. Evidence ⬳20(1)—It is common knowledge that many articles are sold under agreement to install them for purchaser, when installation is incidental as compared to purchase price.**

It is a matter of common knowledge that many articles are sold under agreement or understanding that seller will have them installed for purchaser, when such installation is incidental, and involves small expense as compared to purchase price.

**3. Corporations ⬳673—In suit by foreign corporation, burden of proving plea in abatement on pleader.**

On plea in abatement, that plaintiff was not entitled to sue because it was foreign corporation not complying with statute (Rev. St. arts. 1314–1321), requiring filing articles of incorporation in office of secretary of state, burden of proving transaction constituted intrastate commerce rather than interstate commerce was on the defendant.

**4. Corporations ⬳673 — Burden of proving sale of bookkeeping system by local agents of foreign corporation was intrastate commerce not sustained.**

In action on contract for sale of McCaskey register or bookkeeping system by local agent of foreign corporation, where defendant pleaded failure of plaintiff to file articles of incorporation in office of secretary of state to secure a permit and entitle corporation to sue, under Rev. St. arts. 1314–1321, defendant *held* not to

---

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

have met burden of proving that transaction constituted intrastate, rather than interstate, commerce.

Appeal from McCulloch County Court; Evans J. Adkins, Judge.

Suit by the McCaskey Register Company against James T. Mann and others. Judgment for defendants on plea of abatement, and plaintiff appeals. Reversed and remanded.

J. E. Shropshire, of Brady, for appellant.

Newman & McCollum, of Brady, for appellees.

KEY, C. J. Appellant's brief contains the following substantially correct statement of the nature and result of this suit:

"Appellant, a nonresident corporation, domiciled at Alliance, Ohio, brought this suit upon written contracts for the sale of goods to appellees. The contracts were in the form of orders for the goods, which were signed by J. T. Mann, for appellees, in the fall of 1919. The orders so signed by appellees were on printed forms furnished to its agents by appellant, and the said forms had printed across their center or middle of the front page, in large capital colored type, the following: 'NO GOODS SOLD ON TRIAL.' The sales were made through local agents representing appellants, and said agents were domiciled in Texas, and were working for appellant in Texas, and the orders were taken in Brady, Tex., and sent by the agent to the home office of appellant at Alliance, Ohio. At the time of taking each order, a cash payment was made by appellees to the agent of appellant. The contract forms which were used in this transaction expressly provide that all are taken subject to approval by appellant, at its home office in Alliance, Ohio. These contracts were sent in and approved by appellant at Alliance, Ohio, and the goods were partly manufactured, and the rest collected for and shipped to appellees in obedience to the said written orders or contracts. Appellant filed this suit for a balance of $541 due for the goods received by appellees under the contracts, which contracts were fully set out in the petition. In reply to the petition of appellant, appellees admitted the execution of the contracts, but pleaded that the contracts were signed by mistake, stating that J. T. Mann who signed them (two of them) at different times, did not read them, but relied upon previous verbal negotiations and assurances, from the agent of appellant, to the effect that the goods were to be shipped upon trial, with the right to reject them if unsatisfactory. In reply to this answer, appellant, by supplemental plea, pleaded that it had no notice of any verbal understandings contradictory to the written contracts sued upon, that the agents had no authority to vary the written contracts by parol, and that appellant had, relying upon the written contracts, approved same, manufactured the goods for and shipped them to appellees; and that appellees were estopped from relying upon such a defense in this case. A jury was demanded, and the fee paid by appellant, and the case was regularly transferred to the jury docket, and called for trial, at which time the appellant announced

ready for trial (it being plaintiff below), when appellees stated to the court that they wanted their plea in abatement passed upon before announcing on the merits. Thereupon the court heard the pleadings and the evidence submitted on appellees' plea in abatement (which was to the effect that appellant had no legal right to prosecute this suit because it had not qualified and procured a permit to do business in this state, under the statutes of the state of Texas). After hearing the pleadings and the said evidence, the court sustained the plea in abatement, without submitting any issues of fact to the jury, and ordered the cause dismissed, and from which order this appeal is taken."

The trial judge filed the following findings of fact:

"(1) The pleadings in this case are here referred to and made part hereof for allegations contained therein.

"(2) At all times mentioned in the pleadings, and at all times in any way connected with the cause of action sued upon in this case, the plaintiff, the McCaskey Register Company, was a foreign corporation, created and existing under the laws of the state of Ohio, and it has never complied with chapter 26, title 25, Revised Statutes of the state of Texas, by filing with the secretary of state a duly certified copy of its articles of incorporation, and procuring from the secretary of state a permit to transact business in this state.

"(3) Long previous thereto, and during the entire time of all negotiations and transactions between plaintiff and defendant about the matter upon which this suit is based, the plaintiff had a general office in Dallas, Tex., at 412 Sumpter building, and had a general or district agent located there, and with headquarters there, and during all of said time, through its agents and representatives, it solicited business in the state of Texas. During all of the time the negotiations and transactions in the matter in controversy were pending, the plaintiff had 10 salesmen working in the state of Texas, each of whom had headquarters at 412 Sumpter building, Dallas, Tex., but the addresses of said salesmen being, 4 in Dallas, Tex., 2 in San Antonio, Tex., 1 in Amarillo, Tex., 1 in Paris, Tex., 2 in El Paso, Tex., and 1 in Austin, Tex. The plaintiff had been doing and carrying on similar business and transactions to the transaction sued on in Texas since 1905. Its agent or salesman, J. H. Semmes, who negotiated the transaction on which this suit is based, was its general or district manager in Texas, with headquarters at Dallas, Tex., in September, 1921, and then had under him 27 employees and agents. At the time he negotiated with defendants in connection with the transaction sued upon, he was one of the 10 salesmen in Texas for plaintiff with post office address and headquarters at Sumpter building, Dallas, Tex., and at that time E. T. Ireland, whose headquarters was said Sumpter building, Dallas, Tex., was district manager for plaintiff in Texas, and said J. H. Semmes operated under said Ireland.

"(4) At the time of the negotiations between plaintiff and the defendants, the plaintiff was transacting business in this state, and had established a general and special office in this state, and said office was located at 412 Sumpter building, Dallas, Tex., and was soliciting business in this state, and all the negotiations and

transactions had between defendants and plaintiff or its representatives about the matter in controversy were at Brady, Tex., and the contract alleged by plaintiff was signed at Brady, Tex., and money paid on same by defendants paid at Brady, Tex.

"(5) J. H. Semmes, as agent for plaintiff, agreed to install the bookkeeping and accounting system, contracted for by defendants and the subject-matter of this suit, in the place of business of the defendants at Brady, Tex., and for the purpose of carrying out the contract of the McCaskey Register Company to so install said system at the place of business of defendants at Brady, Tex., J. H. Semmes, as agent for McCaskey Register Company, made several trips to Brady, Tex., and attempted to install said system, but the said J. H. Semmes did not complete the installation of said system, and was unable to make said system handle the business of defendants.

"(6) J. H. Semmes, as agent for the McCaskey Register Company, requested a deposit of $54.50 upon the first order that he took from defendants, and that amount of money was paid to him as agent for the McCaskey Register Company by defendants at Brady, McCulloch county, Tex.

"(7) J. H. Semmes, as agent for the McCaskey Register Company, requested a deposit of $32 upon the second order that he took from defendants, and that amount of money was paid to him as agent for the McCaskey Register Company by defendants at Brady, McCulloch county, Tex.

"(8) The bookkeeping or accounting system, the subject of contract and basis of controversy in this suit, consisted of certain articles manufactured by plaintiff, some of which are kept in stock for sale and some manufactured to order. At the time the contract between plaintiff and defendants was made in this case, the agent of plaintiff making the sale represented to defendants that the articles included in this order were kept in stock, and would be shipped immediately, and arrive and be installed in Brady by October 1, 1919. Said contract was made September 10, 1919.

"(9) The contract between plaintiff, acting by its agent, J. H. Semmes, and the defendants, entered into September 10, 1919, was made and fully agreed upon orally between said J. H. Semmes and defendant James T. Mann in the forenoon, and all the details agreed upon. In the afternoon of the same day the said J. H. Semmes, as agent for plaintiff, presented to said James T. Mann the contract or order, a copy of which is set out and attached to plaintiff's petition, but said J. H. Semmes at that time represented to defendant James T. Mann that it was simply an order specifying the goods to be shipped, and made so they could have the goods shipped according to the verbal contract, and would not bind them to take the goods until they had installed and approved, and at which time the notes provided in the contract would be executed and trade closed. James T. Mann relied upon the representations of said Semmes wholly, and did not read the contract or any part of it, but signed it thinking it was simply an order for the goods to be shipped, and would not vary the verbal contract that had been made. The notes provided for in the written instrument so attached to plaintiff's petition have never been executed, and no request was ever made of defendants to execute such notes. Plaintiff

never complied with its contract by installing the system called for in said contract and making it comply with the contract, but plaintiff sent its agents and representatives to Brady several times for that purpose, and several days were spent in Brady by the agents of plaintiff endeavoring to make said system operate. Said bookkeeping system was to be delivered and installed in the place of business of defendants in Brady, McCulloch county, Tex., by plaintiff, and was to be approved and accepted by defendants before they should become liable to pay for same, and the money that they had paid out for same was to be refunded them at Brady, Tex., on their refusing to accept same. The written instrument declared upon was not the contract entered into between plaintiff and defendants, the real contract being the verbal contract made as above mentioned, by which it was agreed that said bookkeeping system should be delivered to defendants at Brady, Tex., and installed by October 1, 1919, and that after it had been installed and was satisfactory that then defendants should execute notes in payment for same. No such notes have ever been executed, and no demand has ever been made by plaintiff for such notes to be executed."

## Opinion.

[1] We have a statute in this state which reads as follows:

"Hereafter, any corporation for pecuniary profit, except as hereinafter provided, organized or created under the laws of any other state, or of any territory of the United States, or of any municipality of such state or territory, or of any foreign government, sovereignty or municipality, desiring to transact business in this state, or solicit business in this state, or establish a general or special office in this state, shall be, and the same is hereby, required to file with the secretary of state a duly certified copy of its articles of incorporation; and, thereupon, the secretary of state shall issue to such corporation a permit to transact business in this state. If such corporation is created for more than one purpose, the permit may be limited to one or more purposes.

"No such corporation can maintain any suit or action, either legal or equitable, in any of the courts of this state upon any demand, whether arising out of contract or tort, unless at the time such contract was made, or tort committed, the corporation had filed its articles of incorporation under the provisions of this chapter in the office of secretary of state for the purpose of procuring its permit." Rev. St. arts. 1314, 1318.

The trial court held that the statute quoted applies to this case, and that inasmuch as the appellant has not complied with the terms of that statute, it was not entitled to prosecute this suit in the courts of this state. Appellant contends that the facts found by the trial court show that it was engaged in interstate commerce, and therefore the state had no power, by legislation or otherwise, to prescribe any rule or regulation affecting the rights of either party to the litigation.

It is well settled by the decisions of the Supreme Court of the United States, the Supreme Court of this state, and similar tribu-

nals of most, if not all, of the other states, that the provision of the federal Constitution in reference to interstate and international commerce confers upon Congress the exclusive power to regulate such commerce, and therefore the states have no power to enact laws upon that subject. Robbins v. Taxing District of Shelby County, 120 U. S. 489, 7 S. Ct. 592, 30 L. Ed. 694; Leisy v. Hardin, 135 U. S. 100, 10 S. Ct. 681, 34 L. Ed. 128; Miller v. Goodman, 91 Tex. 41, 40 S. W. 718; Smythe Co. v. Fort Worth Glass & Sand Co., 105 Tex. 8, 142 S. W. 1157.

[2] In the cases cited it is held that transactions similar to the transaction involved in this case, with the exception as to agreements for installation by the seller, constitute interstate commerce, and therefore are not subject to state legislation. As to a mere incidental agreement for installation by the seller, we are of the opinion that it should not be held that such an agreement takes the case out of the general rule that such transactions constitute interstate commerce. It is a matter of common knowledge that many articles are sold under agreement or understanding that the seller will have them installed for the purchaser, when such installation is incidental and involves a small expense as compared to the purchase price of the article; and we are of the opinion that such agreements concerning transactions which otherwise would constitute interstate commerce, do not remove them from that category and render them intrastate commerce. Upon that point, this case may not be fully developed, and therefore that issue will be left open in order that additional testimony, if desired, may be offered upon it.

[3, 4] Upon the plea in abatement, which was the only matter tried in the court below, the burden of proof rested upon appellees to show that the transaction involved constituted intrastate commerce, and, in our judgment, they failed to meet that burden, and, for that reason, the judgment of the trial court sustaining the plea in abatement and dismissing the plaintiff's suit is reversed and the cause remanded.

Reversed and remanded.

## MEMORANDUM DECISIONS

### 1

John AINSWORTH v. STATE. (No. 9551.)
(Court of Criminal Appeals of Texas. June 24, 1925.) Appeal from District Court, Eastland County; E. A. Hill, Judge. J. D. Barker, of Cisco, for appellant. Tom Garrard, State's Atty., and Grover C. Morris, Asst. State's Atty., both of Austin, for the State.

MORROW, P. J. The offense is aggravated assault; punishment fixed at confinement in

the county jail for a period of 90 days and a fine of $250. The prosecution was under an indictment charging an assault with intent to murder. The evidence heard before the trial court and the jury is not brought forward for review. There are two bills of exception, one of which complains of the refusal of the court to charge on the law of simple assault; the other complains that the witness Pitman testified that, while standing on the street opposite the place where the shooting took place, he saw a person come out of a door, but that he did not know who it was, but to the best of his knowledge and opinion it was the appellant. In the absence of the evidence, we cannot know whether the issue of simple assault was raised, nor whether there were such facts contained in the bill of exceptions complaining of the testimony of the witness Pitman mentioned as would enable us to determine whether it was admissible or whether it was harmful. Pitman's relation to the case is not revealed by the bill. The record revealing no error, the judgment is affirmed.

### 2

Frank BAILY v. STATE. (No. 9350.)
(Court of Criminal Appeals of Texas. June 24, 1925.) Appeal from District Court, Smith County; J. R. Warren, Judge. Gentry & Gentry, of Tyler, for appellant. Tom Garrard, State's Atty., and Grover C. Morris, Asst. State's Atty., both of Austin, for the State.

HAWKINS, J. Conviction is for selling intoxicating liquor. Punishment, two years in the penitentiary. The record contains neither bills of exception nor statement of facts. Nothing is presented for review. We observe that the sentence fails to give appellant the benefit of the indeterminate feature provided for in article 865a, C. C. P. It will be reformed to authorize imprisonment of appellant in the penitentiary not less than one year nor more than two years. As thus reformed, the judgment is affirmed.

### 3