SOUTHERN DISCOUNT CO. v. ROSE.*
(No. 7649.)

(Court of Civil Appeals of Texas. San Antonio. Dec. 15, 1926. Rehearing Denied Feb. 2, 1927.)

I. Commerce ⊚═40(I)—Mere sale and shipment of article of commerce into state constitutes "interstate commerce."

A mere sale and shipment of an article of commerce into state from another constitutes "interstate commerce," even though sale is effectuated through a soliciting agent operating in state for nonresident dealer.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

2. Commerce ⊚═33(I)—Transaction, embracing shipment of articles from another state and including acts done and other articles obtained within state, loses interstate character.

Where transaction embraces not only shipment of articles from another state, but includes other acts done and other articles obtained within state, which are joined by seller to interstate article, transaction loses interstate character and assumes that of local nature.

3. Commerce ⊚═40(I)—Installing article sold in interstate commerce does not, of itself, deprive transaction of interstate character.

Act of installing an article sold in interstate commerce does not, within itself, deprive the transaction of its interstate character.

4. Commerce ⊚═40(I)—Seller, claiming interstate protection for acetelyne gas plant, must prove complexity requiring other than local skill for installation.

It cannot be said, as a matter of law, that acetelyne gas plants are so rare that local skill cannot comprehend their complexities or install and set them in operation, and seller claiming protection of interstate commerce as to such article has burden of proving necessity therefor.

5. Commerce ⊚═40(I)—Transaction, embracing sale and installation of gas plant, composed partially of units in interstate commerce and some obtained locally, held local business; "doing business" (Rev. St. 1911, arts. 1314, 1318).

Transaction, embracing sale, delivery and installation of an acetelyne gas plant, comprising not only articles in interstate commerce, but, in addition, equipment secured locally with installation by service man in employ of seller, held to constitute transaction of business within state, requiring compliance by seller with Rev. St. 1911, arts. 1314 and 1318, in order that it may enforce contract.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Doing Business.]

6. Bills and notes ⊚═375—Innocent purchaser of negotiable note, given foreign corporation, unlawfully engaged in business within state, may sue and recover thereon.

An innocent purchaser of negotiable note, given foreign corporation, unlawfully engaged in business within state, may sue and recover thereon, notwithstanding that payee and assignor of obligation may not itself have access to courts for such purpose.

7. Bills and notes ⊚═343—Officials of corporation, discounting note with knowledge that seller warranted article for which note was given, must use diligence in ascertaining whether warranty was complied with.

Where officials of corporation, discounting note held by corporation as proceeds of sale of acetelyne gas plant, were interested in seller corporation, and testimony warranted inference of knowledge that plant was installed under warranty, such discount company was put on inquiry to ascertain if warranty had been complied with, and on failure to use due diligence is not an innocent purchaser.

8. Corporations ⊚═401—Corporation, discounting notes of another corporation having common directors, is charged with knowledge that corporation was doing business without permit.

Where officials of corporation discounting note were directors of payee corporation and fully acquainted with its business and manner of conducting business, it is charged with knowledge that such foreign corporation was operating without permit and that its contracts, including note, could not be enforced in state courts, and hence was not an innocent purchaser in such respect.

Appeal from Atascosa County Court; Earl D. Scott, Judge.

Suit by the Southern Discount Company against J. W. Rose. From a judgment of dismissal, plaintiff appeals. Affirmed.

Paul H. Brown, of Karnes City, and Chase Harding, of Crawfordsville, Ind., for appellant.

J. R. Garnand and H. D. Barrow, both of Jourdanton, for appellee.

SMITH, J. The Johnson Acetelyne Gas Company is a foreign corporation, domiciled in the state of Indiana, and is engaged in the sale of acetelyne gas plants. Through a soliciting agent in Texas it sold and warranted one of its plants to J. W. Rose of Pleasanton, Atascosa county, Tex., and took the latter's note for the amount of the purchase price. The plant was sold f. o. b. the

car at Crawfordsville, Ind., and Rose, in accordance with the contract of purchase, paid the freight on the shipment as well as the wages of the "service man" who installed the plant in Rose's home.

Shortly after the execution and delivery of the note, and before its maturity, the gas company, as payee, sold, indorsed, and assigned the note to the Southern Discount Company, another Indiana corporation. Rose refused to pay the note at maturity, and the discount company brought this suit thereon.

Rose sought to defeat payment of the note upon the ground that the plant was not performing in accordance with the gas company's warranty, and to abate the suit upon the ground that the gas company was engaged in business in Texas without having obtained a permit thereto, as required by the statutes of the state, and that the discount company, to whom the note had been assigned, was but a collecting agency for the gas company, and was incorporated as a subterfuge for the purpose of enabling the gas company to evade its responsibilities under the laws of Texas. The discount company, in reply, asserted that it was an innocent purchaser of the note for value and without notice of the facts constituting Rose's defense.

Upon a trial the court below dismissed the suit upon findings that the gas company was engaged in the transaction of business in this state without having obtained a permit therefor, and that the discount company was not an innocent purchaser of the note. The discount company brings this appeal.

It was provided by statutes in force at the time of this transaction that any foreign corporation desiring to transact or solicit business in this state, or to establish a general or special office in this state, is required to file its articles of incorporation with the secretary of state and obtain from him a formal permit to transact such business. Article 1314, R. S. 1911. And it was further provided, in article 1318, that:

"No such corporation can maintain any suit or action, either legal or equitable, in any of the courts of this state upon any demand, whether arising out of contract or tort, unless at the time such contract was made, or tort committed, the corporation had filed its articles of incorporation under the provisions of this chapter in the office of the secretary of state for the purpose of procuring its permit."

It is conceded that appellant, the discount company, is not engaged in the transaction of business within this state, and that its rights are not affected by its failure to obtain the permit required by the statute.

It becomes necessary at the outset to determine whether the transaction between the gas company and Rose was one in interstate commerce, or in intrastate commerce. The question is shrouded in doubt growing out of the confusion and inconsistencies in the decisions of the courts upon the subject. A commendable tendency is discernible among the decisions, however, to get away from an earlier inclination to resolve these cases strictly in favor of interstate commerce. This tendency is evidenced not only by the state courts, but by the federal courts as well. It is noticeably present in the opinion of the Supreme Court of the United States in the case of Browning v. City of Waycross, 233 U. S. 16, 34 S. Ct. 578, 58 L. Ed. 828, and in the able and elaborate opinion of Judge Moursund, then of this court, in the case of York Mfg. Co. v. Colley, 172 S. W. 206.

[1] Of course, the mere sale and shipment of an article of commerce into this state from another constitutes interstate commerce, even though the sale is effectuated through soliciting agents operating in this state for the nonresident dealer, and the delivery is made by the latter at the destination. The sale and delivery of a sewing machine offers a fair example of such transaction. Ordinarily, a sewing machine is complete within itself and is shipped as a distinct and complete article, so that, when delivered at destination, nothing remains to be done to make the transaction complete except payment, which the seller, although a foreign corporation operating without a permit to do business in the state, may enforce through our courts.

[2] But the courts draw a distinction between that simple transaction wholly in interstate commerce and a transaction which embraces not only the shipment of articles from another state, but includes other acts done and other articles obtained in this state, which are joined by the seller to the interstate article, and both erected into one whole plant or machine or other object, in which case the transaction loses its interstate character and assumes that of a local nature. To state it differently, if the complete product of the transaction is made up of different units or parts, some of which are shipped into the state from without and others are obtained from local sources, and both are united by the seller into the finished product in order to complete the sale, then the transaction, as a whole, is without the protection of interstate commerce and becomes a subject of regulation by the state. The protection of interstate commerce is extended to those transactions only which consist of acts concerning interstate commerce goods, "dissociated from any attempt to connect them with or make them a part in the state of property which had not and could not have been the subject of interstate commerce." Browning v. City of Waycross, supra; York Mfg. Co. v. Colley, supra.

[3] Some confusion exists in the reported cases as to the effect upon the question under consideration of an executed obligation of the seller, as a part of the transaction, to assemble the units of the product sold from

another state, and complete and install the plant in this state. In our opinion, this act of installing an article sold in interstate commerce does not, within itself, deprive the transaction of its interstate character, although the Supreme Court of Texas appears, so far, to have declined to decide the effect of such contractual obligation upon a transaction otherwise wholly interstate in character. Smythe Co. v. Fort Worth, etc., Co., 105 Tex. 8, 142 S. W. 1157. That question is present in this case, but is not deemed of controlling influence.

[4] The nature of the commodity sold is also taken into consideration by some courts in determining the effect upon the transaction of the fact that the seller follows his product into another state for the purpose of installing it for use. The tendency is to hold that this act of installation by the seller does not impair the interstate quality of a transaction when the article sold is of such an intricate or complex nature as to render it necessary that the seller, being familiar with its nature, agrees to follow his product into the state of the buyer's domicile and install and set it in operation in order to accomplish the interstate transaction. If the problem of installation is beyond the ingenuity of local mechanics, sales could not be made without the agreement of the seller to install the product and set it in operation, and this service to be performed in the state of delivery will not be permitted to deprive the transaction of its interstate quality and thereby subject it to local regulation and restraint. The Supreme Court of the United States, in the Waycross Case, supra, however, expressly declined to say how far this theory should be given effect. This question may be said to arise in this case, although that is doubtful, for it cannot be said, as a matter of law, that acetelyne gas plants are now so rare that local skill cannot comprehend their complexities or install and set them in operation. The question is one of fact to be determined in each case, with the burden of pleading and proof upon the party claiming the protection of interstate commerce.

[5] The facts in this case, with reference to the transaction as being interstate or intrastate, must be analyzed. The subject of the sale in controversy was an acetelyne gas plant for use in cooking and lighting in appellee's home. The complete plant comprises, primarily, a generator, a water heater and tank, and heating and lighting fixtures and appliances. All these items were shipped from the gas company's domicile in the state of Indiana direct to appellee in the state of Texas. The shipment was made f. o. b. the car in Indiana, the shipping charges being paid by appellee, who paid the purchase price of the plant by executing the note herein sued upon. It seems to be true, as a matter of law and of fact, that these facts, if standing alone, would constitute the transaction as one of purely interstate commerce.

But the transaction was not completed by the facts just stated. The articles shipped from Indiana did not comprise all those that were put into the completed plant, for, in addition to the articles enumerated, the obligation and undertaking of the seller required it to supply between 150 and 175 feet of three-fourths inch and three-eighths inch piping for distributing the gas, when generated, to various parts of appellee's premises, as well as the various elbows, joints, unions, and like materials necessary in connecting the pipe into lines and with the various heating and lighting drops and stations on the premises. And, in addition to this equipment, the seller supplied 100 pounds of carbide with which to set the plant in operation and test its power, capacity, and sufficiency under the seller's warranty. All these materials and supplies were obtained by the seller, not by shipment without the state, but from points within the state; they were obtained, not out of interstate commerce, but from intrastate commerce. Just what proportion the value of these articles obtained locally bore to the value of those sold in interstate commerce does not appear, but, while it is apparent that that proportion was relatively small, it cannot be said to be negligible; on the other hand, it is necessarily substantial.

The result of the facts stated, then, is that the completed gas plant consisted of various units or parts, some of which came out of interstate commerce and some out of intrastate commerce, and all of which were supplied by the seller under the terms of its contract and by it united into the complete plant for which the note now in controversy was executed in settlement of the purchase price.

The complete plant was sold by the gas company to appellee at the agreed price of $415, plus the freight charges on the articles shipped from Indiana, and plus the compensation paid the "service man," or "installer," as he was indiscriminately referred to, who installed the plant and set it in operation. The amount of this charge was $36, which was paid by appellee when the work was completed, in accordance with the contract between him and the company. Now, the parties are in dispute over the question of whether this "service man" was the creature of the gas company or of appellee. The gas company seeks to evade this responsibility upon the quite obvious theory that its connection with the transaction was limited to the sale and shipment of the articles originating in Indiana, which theory, if established, would confine the transaction to one purely in interstate commerce. But, after careful analysis of the record, we have reached the firm conclusion that this theory is without support. It is quite obvious from the record that the gas company, being obli-

gated thereto, undertook and accomplished the installation of the plant, both with the articles and materials shipped from Indiana as well as those obtained by it in Texas, and that the service man, although but an incident to that accomplishment, was a representative of and responsible to the company. We will state some of the facts which impel us to these conclusions. The sale of the plant to appellee was effectuated by a soliciting agent operating in Texas for the company. Under his contract, he was paid a certain commission, half of which was due when the company approved the sale, and the balance, "when the job is installed and all necessary papers signed and received at the home office." The printed form of the order for, the plant contained a stipulation that the purchaser "will pay (amount due installer) in cash upon installation," and the balance by note. Upon receipt of the order for the plant, the company wrote appellee, acknowledging its receipt and saying, among other things, that "shipment will be made as promptly as possible, and upon receipt of advice that you are ready for the service man we will take steps to secure a prompt installation." When the shipment arrived at appellee's home. station, he notified the company's soliciting agent in accordance with the instructions of the latter, who had promised to "send a company man down to install it," and a day or two later the service man presented himself at appellee's home, bringing with him the piping and other materials used in supplementing the articles shipped from Indiana and necessary to the installation. When this man completed the installation of the plant, he required appellee to sign a statement upon a form apparently furnished the service man for that purpose, in which the purchaser stated that he had witnessed the test of the plant made by the installer, that the latter explained the operation of the plant, that he had received the "instruction card" from the installer, and that "the installation is complete and satisfactory." This statement was signed by the appellee and delivered to the installer, who forwarded it to the gas company, together with his formal report to the company, evidently furnished him in blank for the purpose, showing the details of the installation and tests. We conclude from the facts stated that the gas company was obligated to install the plant as a part of the transaction, that the service man was its agent in doing the work, and that the whole transaction, embracing the sale, delivery, and installation of articles obtained by the seller through intrastate as well as interstate commerce, constituted the transaction of business within this state. This being true, the gas company was required to secure a permit to engage in that business in the state, failing in which it had no right to enforce its contract in the courts of the state.

But the fact that the gas company was not entitled to sue in the courts of this state to enforce its contract, or to enforce the payment of the note arising out of that contract, does not control here, for the simple reason that this suit was brought by another corporation, the Southern Discount Company, to which the note sued upon had been assigned by the gas company. The discount company is a foreign corporation also, it is true, and had obtained no permit to engage in business in this state. But its business is limited to the purchase and sale of securities and is conducted exclusively in the state of its domicile, Indiana, and therefore it is not required to secure a permit in this state to enable it to enter the courts of the state for the enforcement of the collection of its securities against citizens of the state.

[6] It is settled that an innocent purchaser of a negotiable note, given a foreign corporation, unlawfully engaged in business in the state, may sue in our courts and recover thereon, notwithstanding the payee and assignor of the obligation may not itself have access to our courts for that purpose. Bank v. Holland, 103 Tex. 266, 126 S. W. 564. So, if the discount company purchased the note before maturity, for value and without notice of its infirmities, then it has the right to enforce its collection in the courts of this state. The record shows that the discount company purchased the note before maturity and for value, and it remains to be determined, only, if it purchased with actual or constructive notice of the defenses urged by appellee in the suit.

The record shows that appellant, the discount company, was chartered under the laws of the state of Indiana in January, 1924, for the purpose of discounting commercial paper. It was organized and its capital stock is owned and held by a group composed exclusively of stockholders of the gas company, the payee, assignor, and indorser of the note here in suit. Its president is a stockholder and director, and its secretary and treasurer, a stockholder and a vice president, of the gas company, while the president, the secretary, and manager, and the treasurer of the gas company are stockholders in appellant corporation. Soon after it secured its charter, appellant began the purchase of notes obtained by the gas company from the purchasers of its plants, and the note now in suit was among the first batch of those obtained. At the time of the trial appellant was holding about 150 of the gas company notes, which comprised half the paper then held by appellant, the remainder having been obtained from the market generally. Appellant paid cash for the gas company paper discounted by it, and there was no difference between its manner of dealing with the gas company and its manner of dealing with others in similar transactions. The facts we have just set out are

not deemed sufficient within themselves to charge appellant, as a matter of law, with notice of defenses not apparent upon the face of the notes obtained from the gas company by appellant. We have set out those facts, not because they are regarded as sufficient to defeat appellant's plea of innocent purchaser, but as showing the close relationship between the two corporations and their officials with reference to the· question of diligence, now to be mentioned.

The record further shows that the officials of appellant corporation are and for many years have been familiar with the affairs of the gas company and the latter's method of conducting its business. They are familiar with the nature of the gas company's product and the methods by which that product is sold, distributed, and installed, with the very terms upon which those sales are made; they even know the character and duration of the obligations by which the purchasers of the gas company's products pay for those products. The secretary and treasurer of appellant, who is also a stockholder and vice president of the gas company, testified on this point:.

"I knew the Johnson Acetylene Gas Company had been in business for 15 to 20 years, selling acetylene gas plants in many parts of the United States. I knew its business was manufacturing these plants and other products and selling its products the same as manufacturers generally do. I knew it frequently sold its products on time and taking notes from the purchaser. I knew its general plan of business was to send agents to different localities, or have agents in different localities, soliciting purchasers for its plants, and also that dealers in different parts of the country sent in orders for plants and that the company shipped these plants · delivered on board cars at Crawfordsville. I assume other officers and various stockholders in the Southern Discount Company knew in a general way of the Johnson Acetylene Gas Company's plan of business about as detailed above."

[7] This and other testimony fully warrants the inference that the officials of appellant corporation knew, not only the facts we have set out, but also that the gas company sold and installed the plant in controversy to appellee upon a warranty, that the note sued on was given in pursuance of that warranty, and that its collection could be

290 S.W.—55

defeated by a breach of that warranty. Having this knowledge, appellant purchased the note in controversy. And, having this knowledge, it was put upon inquiry to ascertain if the gas company had complied with the warranty—if appellee had a defense to the note based upon a breach of that warranty. If appellant failed to use diligence in pursuing that inquiry, then it was not an innocent purchaser of the note and cannot urge that claim. If it was an innocent·purchaser, then it can enforce the collection of the note through the courts of this state, even though the payee could not do so in view of the fact that it was doing business in the state without first having obtained a permit thereto; if it was not an innocent purchaser, then the courts of the state are not open to it in the case.

[8] The question of innocent purchaser goes further still, however, in the disposition of this appeal. It goes beyond the mere question of whether or not appellant was cognizant of the existence of a breach of warranty, which is an issue of fact to be determined in a trial upon the merits; it extends to and is determinable by the issue of law, as to whether or not appellant was cognizant of the fact, or should have ascertained the fact after being put upon inquiry, that the note sued on was voidable on the ground that it accrued to the gas company in a transaction rendering it unenforceable because the gas company was engaged in business in this state without the sanction of the laws of the state. That question is determinable by the record here, which is not true of the issue of breach of warranty. For, the fact that appellant's officials were fully acquainted with the nature of the gas company's business and its methods of conducting that business in Texas carries with it the necessary conclusion of law that appellant knew that that business, being conducted by a foreign corporation operating within this state without a permit thereto, was unlawful, and that its contracts, including this note arising therefrom, cannot be enforced in the courts of the state. Having purchased the note with a knowledge of its invalidity in that respect, appellant was in the same position as its assignor, the payee, and was therefore not an innocent purchaser.

The judgment is affirmed.