## AMERICAN SODA FOUNTAIN CO. v. HAIRSTON et al.

### No. 2931.

Court of Civil Appeals of Texas. El Paso. Feb. 8, 1934.

Rehearing Granted March 8, 1934.

Rehearing Denied March 22, 1934.

See, also, 52 S.W.(2d) 764.

Peyton A. Ellison and Hoyt A. Armstrong, both of Dallas, for appellant.

N. C. Walker, of San Saba, for appellees.

HIGGINS, Justice.

On March 14, 1930, the American Soda Fountain Company, a corporation, incorporated under the laws of Delaware, filed this suit in One Hundred First district court of Dallas county, against R. A. Hairston and A. D. Nelson, copartners under the firm name of Hairston Drug Company. The suit was to recover upon notes given by defendants in payment for a soda fountain and its equipment and to foreclose a mortgage upon the property sold.

On April 12, 1930, defendants, in due order of pleading, filed plea in abatement and answer to the merits. In the plea they set up that the notes sued upon were given in part payment for the property described in the mortgage and purchased by defendants from the American Soda Fountain Company, a corporation, incorporated under the laws of Maine; that such corporation was transacting and soliciting business in Texas and had failed to file a certified copy of its articles of incorporation with the secretary of state, and had failed to secure a permit to do business in this state wherefore neither said corporation nor its pretended assignee, the plaintiff, could maintain the suit.

On June 4, 1930, an amended petition was filed whereby the American Soda Fountain Company, a corporation, incorporated under the laws of Maine, was substituted as the plaintiff in the case.

December 22, 1932, the case was transferred to the One Hundred Sixteenth district court, the terms of which begin on the first Monday in January, April, July, and October and continue until the Sunday immediately preceding the date set for the beginning of the next term. Acts 41st Legislature, 5th C. S. c. 71, p. 228 (Vernon's Ann. Civ. St. art. 199, subd. 116).

On the date of the transfer judgment was rendered by the One Hundred Sixteenth district court in favor of the American Soda Fountain Company for the amount of the notes and the mortgage foreclosed. This judgment was rendered in the absence of defendants and their attorney, all of whom were nonresidents of Dallas county.

January 12, 1933, defendants filed motion for new trial setting up a good defense and excusing their failure to be present when the case was called for trial. The motion was sustained and on January 27, 1933, defendants filed their first amended plea in abatement and first amended answer and cross-action for damages.

548

Later the case was transferred to the Fourteenth district court of Dallas county where on March 14, 1933, a hearing was had and in response to a peremptory charge a verdict was returned finding that plaintiff, at the time of transactions in question, was a foreign corporation, and in carrying on said transactions was doing business in Texas without having first obtained a permit from the state so to do. Whereupon the plea in abatement was sustained and the suit dismissed.

## Opinion.

The October term, 1932, of the One Hundred Sixteenth district court continued in session until Sunday, January 1, 1933. The motion for new trial and to set aside the judgment rendered December 22, 1932, was filed January 12, 1933.

■ Appellant presents the point that since the motion for new trial was filed at the succeeding term, the judgment could not be set aside in the absence of written agreement of the parties; that when a motion for new trial was not filed during the term at which the judgment was rendered, such judgment can be vacated only on a bill of review and the motion in this was insufficient as such a bill. Smith v. Ferrell (Tex. Com. App.) 44 S. W.(2d) 962, from Harris county, is cited as decisive in favor of the position stated. That case has no present application for the reason that the petition for review in that case was filed at a subsequent term and about five months after the rendition of the judgment sought to be vacated. It was simply held that the proceeding must be considered as a bill of review because filed after the judgment had become final by operation of law under the provisions of article 2092, R. S., as amended by Acts 1929, c. 222, § 1 and Acts 1930 (5th Called Sess.) c. 70, § 1 (Vernon's Ann. Civ. St. art. 2092).

The practice in such matters in the civil district courts of Dallas and Harris counties is governed by the article mentioned.

Subdivision 29 thereof provides that motions for new trials shall be filed within 10 days after the judgment is rendered, but this time limitation is regarded as directory. Automobile, etc., v. Radford (Tex. Civ. App.) 293 S. W. 869; Id. (Tex. Com. App.) 299 S. W. 852.

It rests within the sound discretion of the court whether a motion for new trial not filed within the ten-day period will be considered. Southern S. S. Co. v. Edwards (Tex. Civ. App.) 291 S. W. 335. Subdivision 30, of said article,

provides: "Judgments of such civil district courts shall become as final after the expiration of 30 days after the date of judgment or after a motion for a new trial is over-ruled as if the term of court had expired. After the expiration of thirty days from the date the judgment is rendered or motion for new trial is over-ruled, the judgment cannot be set aside except by bill of review for sufficient cause, filed within the time allowed by law for the filing of bills of review in other district courts."

The motion for new trial in this case was filed in less than thirty days after the rendition of the judgment. The judgment therefore had not become final.

Not having become final, the court had jurisdiction to entertain the motion. Nevitt v. Wilson, 116 Tex. 29, 285 S. W. 1079, 48 A. L. R. 355.

And in Wear v. McCallum, 119 Tex. 473, 33 S.W.(2d) 723, 724, Justice Pierson said: "That a trial court has control over his judgments until they become final judgments by operation of law, either by the termination of the term of court at which they are entered or by other statutory provision, may be admitted. The district courts of Dallas county, however, as well as those of certain other counties in Texas, as to when judgments entered by them shall become final are controlled by article 2092, subd. 30, R. S. 1925."

In Pierce v. Watkins, 114 Tex. 153, 263 S. W. 905, 907, it was said: "The judgment does not become final until after the expiration of thirty days from the date of the judgment, or after a motion for new trial was overruled, at which time the term of court is at an end as far as the immediate case is concerned."

See, also, Townes v. Lattimore, 114 Tex. 511, 272 S. W. 435, and Nevitt v. Wilson, supra.

Under the authorities cited it is quite clear the court had jurisdiction to entertain the motion for new trial and power to grant same.

■ Another proposition is to the effect that the original plea in abatement was overruled by operation of law upon expiration of the term at which it was filed. This is without merit. Failure to invoke timely ruling of the court upon a plea in abatement (see article 2013, R. S. and District Court rule 24) may operate as a waiver of such plea and require that it be overruled when it is acted upon (Texas Packing Co. v. Railway Co. (Tex. Com. App.) 227 S. W. 1095). But the plea until acted upon remains undisposed of re-

gardless of the termination of the term at which it was filed.

█ Furthermore the original plea in this case was directed against the suit of the American Soda Fountain Company of Delaware. That company passed out of the case by the amended petition which substituted the Maine corporation as the plaintiff in the case.

This brings us to a consideration of the plea upon its merits. There are two corporations bearing the name of American Soda Fountain Company, one incorporated under the laws of Maine; the other. incorporated under the laws of Delaware. These corporations will' be respectively referred to as the Maine company and the Delaware company. The first-named company is without a permit to transact business in this state. The other company has been transacting business in the state for many years and has a permit so to do. It has a place of business in Dallas. C. F. Rouse is a representative of the Delaware company. Upon the solicitation of Rouse the defendants gave a written order for the property sold which reads:

"American Soda Fountain Company (Maine Corporation) Watertown, Mass.; Please ship the following described

"Special innovation soda water apparatus as follows: on or about Rush, or as soon thereafter as possible to Hairston Drug Store, Richland Springs, Tex.

"(Give name and address where apparatus is to be installed) Description 1—12 ft Arctic, 10 pumps, 3 fruits, 3 draft arms, (xxxx) 1 sink, 1 spoon Vat, 1—No. 602 dipper well 1—Auto tumbler washer

"Counter—Breche Pav. die, Verde top, verde frieze & verde base Fob factory. (1-Leader Carb. 110 Volts a. c. 60 cy. (used carbonator in Dallas stock in A1 condition fob Dallas.)

"For which we agree to pay ($1452.50 Fourteen Fifty Two and 50/100) f. o. b. Watertown, and to deliver to you properly packed, the following described apparatus 16 ft. Liquid which we warrant to be free from all liens, and we further agree to the following:—

"Terms:—$72.60 paid with this order, $145.-25 to be paid on tender of bill of lading, and balance $145.25 May 1st and 30 monthly payments beginning June 1st, 1929.

"Ship via ———— to your order. Send bills of lading to ———— Bank, to be surrendered on payment of draft and signing of notes in your usual form to evidence above deferred payments with interest at 6 percent from date

of shipment. We agree at such time or at any later time to execute and deliver to you or your authorized representative mortgage or such other paper, acknowledgments or affidavits which you may request. We will pay all freight and transportation charges and we assume all risk of loss and damage after shipment has been made. We will pay all taxes. You will insure the apparatus for the account of our respective interest in your Blanket Policy against damage during transit and loss by fire from the time it leaves your factory until fully paid for, and for such insurance we agree to pay you one and one-half per cent (1 1/2 per cent) of purchase price, which shall be added to the 1st, 13th and 25th notes. You are not responsible for any delays caused by strikers, accidents, or other causes beyond your control. We will attend to all plumbing and electrical work. If we default you may repossess and pursue any other remedy which law or equity may permit. You are to retain title of above property until purchase price, or any notes, or renewals thereof, or judgment for same shall have been paid in full.

. ."It is agreed that upon the failure or refusal of the undersigned purchaser to accept said goods when tendered, or to pay the freight and transportation charges on said goods, or to make the settlement or any payment provided for, the full purchase price of said goods, less any actual cash payments thereon, and all unpaid payments shall at once become due and payable at Dallas, Dallas County, Texas; whereupon American Soda Fountain Company, or any person by its order, may take possession of and remove said goods with or without legal process and proceed at once to sell the same at either private or public sale, after posting notices in three public places within the county for ten days prior to such public sale and apply the proceeds of such sale to the principal, interest and attorney's fees due upon the indebtedness resulting from this contract and the expense of said sale, and the remainder, if any, shall be paid over to the purchaser. It is agreed further that should the purchaser fail or refuse to complete this contract, the American Soda Fountain Company may elect either to declare the entire debt herein contracted, due and payable, or retain as liquidated damages for such breach, the advance payment made by the purchaser at the time of the execution of this order. It is further agreed that should any portion of the indebtedness hereby incurred by the purchaser, be placed in the hands of an attorney for collection after its maturity, the purchaser agrees to pay fifteen (15%) per cent thereon additional for attorney's

## 550

fees. It is further agreed by the purchaser that in whatever manner said property shall become attached to real estate, it shall be and remain personal property and shall not become a fixture or any part of the real estate.

"There are no other conditions or agreements except those herein stated. This order cannot be countermanded. It is solicited by an employee of the American Soda Fountain Company (Delaware Corporation), and is taken subject to acceptance in writing of an officer of your Company.

"Witnesses:

"Hairston Drug Company
By R. A. Hairston
Signature of purchasers."

This order was accepted by the Maine company at its place of business in Watertown, Mass., where both companies have offices. The Maine company manufactures and sells soda fountains and accessories. The Delaware company is engaged solely in the sale of soda fountains and accessories on a commission basis. The fountain and other articles sold, except the Leader carbonator, were shipped from Watertown, Mass. They were installed at Richland Springs, Tex., by the Delaware company through its representative Rouse, at the expense of the Delaware company. Subsequent to the installation of the fountain, repairs thereon were made by the Delaware company in an effort to correct defective original installation. The Leader carbonator referred to in the order had been previously sold by the Maine company, repossessed by it, and stored in the warehouse of the Delaware company at Dallas. It was sold to avoid shipping back to Watertown. It was sold to defendants for $118.75. New types of the carbonator sold for $235. It was also shown that in part payment for the property sold an old fountain owned by defendants was traded in. The old fountain became the property of the Behrens Drug Company of Waco, Tex., which company represented the Delaware company in the Richland Springs trade territory and was entitled to a part of the commission earned upon the sale. A part of the old fountain was sold to a party in Richland Springs.

The foregoing statement sufficiently reflects the material facts shown in support of the plea in abatement.

■ It is well settled that the statutes of this state (articles 1529 and 1536, R. S.), requiring foreign corporations transacting business in Texas to comply with certain conditions and obtain a permit as a condition precedent to the right to sue in the local courts, have no application to suits based upon sales made in interstate commerce.

■ It is also settled that the interstate character of a sale is not affected by the fact that the seller, as an incidental part of the contract of sale, agrees to assemble and install in this state as a complete unit the property sold and does so install it. York Mfg. Co. v. Colley, 247 U. S. 21, 38 S. Ct. 430, 62 L. Ed. 963, 11 A. L. R. 611; Southern Discount Co. v. Rose (Tex. Com. App.) 296 S. W. 482, 483; J. B. Colt Co. v. McBurnett (Tex. Civ. App.) 1 S.W.(2d) 385.

But these rules, in our opinion, have no present application because of the fact that a part of the property sold was a Leader carbonator previously repossessed and owned by appellant situate in this state. The sale of this article was purely a local transaction and a part of the articles sold and to be assembled and installed in this state.

This presents a case where a sale of articles in interstate commerce was by the seller joined with a local sale, wherefore, in our opinion, the transaction lost its purely interstate character. This conclusion, however, is not free from doubt as to its correctness in view of the ruling in Southern Discount Company v. Rose, supra.

In that case a foreign corporation sold, in interstate commerce, and installed in this state an acetelyne gas plant.

The facts were thus stated by Justice Smith of the Court of Civil Appeals, 290 S. W. 861, 863:

"The facts in this case, with reference to the transaction as being interstate or intrastate, must be analyzed. The subject of the sale in controversy was an acetelyne gas plant for use in cooking and lighting in appellee's home. The complete plant comprises, primarily, a generator, a water heater and tank, and heating and lighting fixtures and appliances. All these items were shipped from the gas company's domicile in the state of Indiana direct to appellee in the state of Texas. The shipment was made f. o. b. the car in Indiana, the shipping charges being paid by appellee, who paid the purchase price of the plant by executing the note herein sued upon. It seems to be true, as a matter of law and of fact, that these facts, if standing alone, would constitute the transaction as one of purely interstate commerce.

"But the transaction was not completed by the facts just stated. The articles shipped from Indiana did not comprise all those that were put into the completed plant, for, in ad-

dition to the articles enumerated, the obligation and undertaking of the seller required it to supply between 150 and 175 feet of three-fourths inch and three-eighths inch piping for distributing the gas, when generated, to various parts of appellee's premises, as well as the various elbows, joints, unions, and like materials necessary in connecting the pipe into lines and with the various heating and lighting drops and stations on the premises. And, in addition to this equipment, the seller supplied 100 pounds of carbide with which to set the plant in operation and test its power, capacity, and sufficiency under the seller's warranty. All these materials and supplies were obtained by the seller, not by shipment without the state, but from points within the state; they were obtained, not out of interstate commerce, but from intrastate commerce. Just what proportion the value of these articles obtained locally bore to the value of those sold in interstate commerce does not appear, but, while it is apparent that that proportion was relatively small, it cannot be said to be negligible; on the other hand, it is necessarily substantial."

In the course of the opinion it was said:

"Of course, the mere sale and shipment of an article of commerce into this state from another constitutes interstate commerce, even though the sale is effectuated through soliciting agents operating in this state for the nonresident dealer, and the delivery is made by the latter at the destination. * * *

"But the courts draw a distinction between that simple transaction wholly in interstate commerce and a transaction which embraces not only the shipment of articles from another state, but includes other acts done and other articles obtained in this state, which are joined by the seller to the interstate article, and both erected into one whole plant or machine or other object, in which case the transaction loses its interstate character and assumes that of a local nature. To state it differently, if the complete product of the transaction is made up of different units or parts, some of which are shipped into the state from without and others are obtained from local sources, and both are united by the seller into the finished product in order to complete the sale, then the transaction, as a whole, is without the protection of interstate commerce and becomes a subject of regulation by the state. The protection of interstate commerce is extended to those transactions only which consist of acts concerning interstate commerce goods, 'dissociated from any attempt to connect them with or make them a part in the state of property which had not and could not have been the subject of interstate commerce.' Browning v. City of Waycross [233 U. S. 16, 34 S. Ct. 578, 58 L. Ed. 828], supra."

In disposing of the case upon writ of error the Commission of Appeals, through Justice Bishop, said:

"In installing the plant the gas company was under obligation to supply, and did supply, from points within this state, between 150 and 175 feet of three-fourths inch and three-eighths inch piping, together with elbows, joints, and unions for distributing the gas when generated to various parts of the premises, and also 100 pounds of carbide with which to set the plant in operation and test its efficiency. * * *

"Our federal Constitution confers upon Congress the exclusive power to regulate interstate commerce, and the state is without authority to enact a law which would interfere with this 'power. The purchase of the gas plant to be transported from Indiana to this state was an interstate transaction, and one which the state by statutory enactment had no power to regulate or control by requiring a permit or denying the seller the right to institute suit in the courts of this state to enforce payment of the purchase price. The right to make an interstate commerce contract,' such as the one here involved, 'includes in its very terms the right to incorporate into such contract provisions which are relevant and appropriate to the contract made.' The agreement to supply materials and labor, whether from points within or without this state, for the purpose of installing the plant and thereby performing the obligation imposed under the terms of the contract, was relevant and appropriate to a transaction inherently interstate in character. The materials and labor supplied were essentially connected with the subject-matter of the sale. This case, in its facts, presents the question of law decided by the United States Supreme Court in the case of York Mfg. Co. v. Colley, 247 U. S. 21, 38 S. Ct. 430, 62 L. Ed. 963, 11 A. L. R. 611. See, also, McCaskey Register Co. v. Mann (Tex. Civ. App.) 273 S. W. 1113."

The effect of the ruling of the Commission of Appeals was that the agreement to supply material and labor within this state simply for the purpose of installing the plant did not alter the interstate character of the transaction.

But in the present case the contract called for the sale of a carbonator owned by appellant and situate in this state. Such sale was a local transaction and not a mere incident of

the sale of the other articles and their installation.

In our opinion, by the joining of this local transaction with the interstate sale of the other articles, the transaction as a whole lost its purely interstate character and renders applicable the views and ruling of the Court of Civil Appeals in the Southern Discount Company Case.

We, therefore, sustain the action of the trial court in giving the peremptory instruction.

Affirmed.

### On Motion for Rehearing.

In its motion for rehearing appellant calls attention to the recent case of Phelps v. Jesse French, etc. (Tex. Civ. App.) 65 S. W.(2d) 374.

In the case mentioned Justice Looney, speaking for the Dallas Court of Civil Appeals, sustained a recovery by a foreign corporation of the purchase price of four pianos, owned by such corporation, stored in Texas upon repossession, and later sold to Phelps. There is no material difference between the facts in that case and the one at bar. As was stated in our original opinion, our conclusion sustaining the judgment of the lower court was reached with doubt as to its correctness.

Upon consideration of the motion for rehearing, the conclusion is reached that the ruling in the case cited is correct and that we erred in affirming the judgment sustaining the plea in abatement.

See, also, Miller v. Goodman, 91 Tex. 41, 40 S. W. 718; Shaw Piano Co. v. Ford (Tex. Civ. App.) 41 S. W. 198; Smith v. Mergenthaler Linotype Co. (Ark.) 58 S.W.(2d) 686; Vulcan, etc., v. Flanders (D. C.) 205 F. 102.

Accordingly the motion for rehearing is granted, the judgment is reversed, and the case remanded for trial upon its merits.