# YORK MANUFACTURING COMPANY *v.* COLLEY ET AL.

## ERROR TO THE COURT OF CIVIL APPEALS, FOURTH SUPREME JUDICIAL DISTRICT, OF THE STATE OF TEXAS.

No. 200. Argued March 18, 1918.—Decided May 20, 1918.

In an interstate contract for sale of a complicated ice-making plant, it was stipulated that the parts should be shipped into the purchasers' State and the plant there assembled and tested under the supervision of an expert to be sent by the seller. The purchasers agreed to pay him a per diem while so engaged and to furnish mechanics for his assistance, and their obligation to accept the plant was made dependent on the test. The erection took three weeks and the test a week more. *Held*, that these provisions as to the services of the expert were germane to the transaction as an interstate contract and did not involve the doing of local business subjecting the seller to regulations of Texas concerning foreign corporations. *Browning* v. *Waycross*, 233 U. S. 16, and *General Railway Signal Co.* v. *Virginia*, 246 U. S. 500, distinguished.

172 S. W. Rep. 206, reversed.

THE case is stated in the opinion.

*Mr. N. C. Abbott* for plaintiff in error.

No appearance for defendants in error.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

The York Manufacturing Company, a Pennsylvania corporation, sued for the amount due upon a contract for the purchase of ice manufacturing machinery and to foreclose a lien upon the same. By answer the defendants alleged that the plaintiff was a foreign corporation, that

it maintained an office and transacted business in Texas without having obtained a permit therefor and was hence under Texas statutes not authorized to prosecute the suit in the courts of the State, and a dismissal was prayed. In reply the plaintiff averred that the contract sued on was interstate commerce and that the state statute if held to apply was repugnant to the commerce clause of the Constitution of the United States. At the trial it was shown without dispute that the contract covered an ice plant guaranteed to produce three tons of ice a day, consisting of gas compression pumps, a compressor, ammonia condensers, freezing tank and cans, evaporating coils, a brine agitator and other machinery and accessories including apparatus for utilizing exhaust steam for making distilled water for filling the ice cans. These parts of machinery, it was provided, were to be shipped from Pennsylvania to the point of delivery in Texas and were there to be erected and connected. This work, it was stipulated, was to be done under the supervision of an engineer to be sent by the York Manufacturing Company for whose services a fixed per diem charge of $6.00 was to be paid by the purchasers and who should have the assistance of mechanics furnished by the purchasers, the supervision to include not only the erection but the submitting of the machinery to a practical test in operation before the obligation to finally receive it would arise. It was moreover undisputed that these provisions were carried out, that about three weeks were consumed in erecting the machinery and about a week in practically testing it, when after a demonstration of its successful operation it was accepted by the purchasers.

The trial court, not doubting that the contract of sale was interstate commerce, nevertheless concluding that the stipulation as to supervision by an engineer to be sent by the seller was intrastate commerce and wholly separable from the interstate transaction, held that the seller by car-

rying out that provision had engaged in local business in the State and as the permit required by the state statutes had not been secured, gave effect to the statutes and dismissed the suit. The case is here to review the action of the court below sustaining such conclusion, its judgment being that of the court of last resort of the State in consequence of the refusal of the Supreme Court of the State to allow a writ of error.

Referring to a previous ruling (*Leschen & Sons Rope Co.* v. *Moser*, 159 S. W. Rep. 1018) in which it had held that the performance by a contractor of the duty of supervising the construction of a complex system of tramways did not constitute a doing of business within the State because it was relevant to and a part of the main contract for the material from which the road was to be constructed which was interstate commerce, the court below concluded that that case had been by it mistakenly decided and therefore should be overruled and not applied in this. The conclusion as to previous error committed, the court said, was persuasively the result of the ruling in *Browning* v. *Waycross*, 233 U. S. 16, which it treated as here conclusively determining that the performance of the contract for the supervision by the engineer was purely intrastate commerce and subject to be treated as such although it formed a part of the stipulations of the principal contract of sale conceded to be interstate commerce.

But we are of opinion this decision was erroneous whether it be examined from the point of view of what was assumed to be the controlling effect of the ruling in the *Waycross Case* or whether it be tested by the elementary doctrines as to what constitutes interstate commerce. In the first place the *Waycross Case* concerned merely the right of the City of Waycross to collect a charge against a person who was carrying on a business of erecting lightning rods as the agent of one who had sold the rods in another State and shipped them to Waycross under an

agreement after their arrival to erect them. The case
turned exclusively upon the nature and character of the
business of erecting lightning rods and the relevant or ap-
propriate relation to interstate commerce of a stipulation
in an interstate contract of sale of such rods providing for
their erection when delivery under the sale was made. As
it was determined that the business of erecting lightning
rods bore no relevant or appropriate relation to the con-
tract made for the sale of such rods, it was decided that
the contract for the erection of the rods did not lose its
local character simply because it was made a part of an
interstate commerce contract for the sale of the rods any
more than would a contract for materials with which to
build a house cause the building of the house to be a trans-
action of interstate commerce and not local business. But
the broad distinction which is established by the state-
ment just made between what was decided in the Way-
cross Case and the question here presented does not rest
alone upon the implication resulting from what was under
consideration in that case but moreover expressly results
from the fact that in the Waycross Case through abun-
dance of precaution attention was directed to the fact
that the ruling there made was not controlling as to a case
where the service to be done in a State as the result of an
interstate commerce sale was essentially connected with
the subject-matter of the sale, that is, might be made to
appropriately inhere in the duty of performance. 233 U.
S. p. 23.

As, in the second place, since the ruling in McCulloch v.
Maryland, 4 Wheat. 316, there has been no doubt that the
interstate commerce power embraced that which is rele-
vant or reasonably appropriate to the power granted, so
also from such doctrine there can be no doubt that the
right to make an interstate commerce contract includes
in its very terms the right to incorporate into such contract
provisions which are relevant and appropriate to the con-

tract made. The only possible question open therefore is, was the particular provision of the contract for the service of an engineer to assemble and erect the machinery in question at the point of destination and to practically test its efficiency before complete delivery relevant and appropriate to the interstate sale of the machinery? When the controversy is thus brought in last analysis to this issue there would seem to be no room for any but an affirmative answer. Generically this must be unless it can be said that an agreement to direct the assembling and supervision of machinery whose intrinsic value largely depends upon its being united and made operative as a whole is not appropriate to its sale. The consequence of such a ruling if made in this case would be particularly emphasized by a consideration of the functions of the machinery composing the plant which was sold, of its complexity, of the necessity of its aggregation and unison with mechanical skill and precision in order that the result of the contract of sale—the ice plant purchased—might come into existence. In its essential principle therefore the case is governed by *Caldwell* v. *North Carolina*, 187 U. S. 622; *Rearick* v. *Pennsylvania*, 203 U. S. 507; and *Dozier* v. *Alabama*, 218 U. S. 124. In fact those cases were relied upon in the *Waycross Case* as supporting the contention that a mere agreement for the erection of lightning rods in a contract made concerning the shipment of such rods in interstate commerce caused the act of erection to be itself interstate commerce. But the basis upon which the cases were held to be not apposite, that is the local characteristic of the work of putting up lightning rods, not only demonstrates beyond doubt the mistake concerning the ruling as to the *Waycross Case* which was below committed, but serves unerringly to establish the soundness of the distinction by which the particular question before us is brought within the reach of interstate commerce.

Of course we are concerned only with the case before

us, that is, with a contract inherently relating to and intrinsically dealing with the thing sold, the machinery and all its parts constituting the ice plant. This view must be borne in mind in order to make it clear that what is here said does not concern the subject passed on in *General Railway Signal Co.* v. *Virginia,* 246 U. S. 500, since in that case the work required to be done by the contract over and above its inherent and intrinsic relation to the subject-matter of the interstate commerce contract involved the performance of duties over which the State had a right to exercise control because of their inherent intrastate character. In fact the case last referred to when looked at from a broad point of view is but an illustration of the principle applied in the *Waycross Case* to the effect that that which was inherently intrastate did not lose its essential nature because it formed part of an interstate commerce contract to which it had no necessary relation. And this truth by a negative pregnant states the obverse view that that which is intrinsically interstate and immediately and inherently connected with interstate commerce is entitled to the protection of the Constitution of the United States resulting from that relation.

It follows therefore that the judgment must be and it is reversed and the case remanded to the court below for further proceedings not inconsistent with this opinion.

*And it is so ordered.*

Mr. Justice Pitney dissents.