## BAY CITY v. FRAZIER.
### No. 6645.

Circuit Court of Appeals, Sixth Circuit.
May 10, 1935.

A. W. Black and J. L. McCormick, both of Bay City, Mich., for appellant.

Edward S. Clark, of Bay City, Mich. (Clark & Henry, of Bay City, Mich., on the brief), for appellee.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

The appellee, assignee of an engineering contract entered into between the Frazier-Ellms-Sheal Company and the appellant, the City of Bay City, Michigan, brought suit against the city upon two counts, one in quantum meruit, and the other for breach of contract. A jury trial was waived in writing, and the District Court rendered judgment for the appellee for $42,865.69.

The action is based upon claimed delay, interference, unreasonable changes and duplications, and the performance of work not included in the contract.

The engineers in October, 1919, agreed with the city to design and supervise the erection of a complete water works with intake, power house and filtration plant, and all necessary accessories in the vicinity of Bay City. The improvement contemplated major changes in pipe lines and river crossings. The clerical work and engineering plans and the details of the map-making, plan-making, etc., were carried on in Cleveland, Ohio. A supplementary agreement was executed upon September 8, 1920. ,

On November 2, 1920, the city adopted a new charter setting up a city commission, and continuing the citizens' committee which had approved the initial contract, as the "special committee." This committee approved all plans in writing, and the city commission took no steps without its recommendation.

The first commissioners took office under the new charter in April, 1921, and under their instructions, the engineers revised their plans. When the city manager was appointed, the engineers were again instructed to revise their plans. Major changes were made in the plans for the boiler house and pumps, and for the force mains and river crossings.

In November, 1931, four new commissioners were elected and a new city manager was appointed. This caused much extra negotiation. Further delay resulted from the city's deferring for fourteen months the sale of its bonds to finance the project. The city saved over $440,000 by this delay. Twenty-one separate contractors handled the construction, causing delay, extra expense and responsibility for the engineers. Three important contracts were let to a local contractor. After repeated requests made by the engineers, the city manager and the special committee, to the city commission that these contracts be defaulted, they finally were declared in default on December 22, 1924. The contractor was then two years behind schedule on one contract, and fourteen months on another. Another year was consumed in the completion of these contracts. The engineers were then compelled to make new surveys, estimates and specifications under these particular contracts. In 1925 they were or-' dered to make, and made, a complete topographical survey of the entire bay property. They aided in making an audit of the water works construction account.

The District Court found that the engineers were actively and continuously engaged in the performance of their contract and in the work and expenditures which formed the basis of this suit, for upwards of six years, until 1926; that if it had not been for the grievances complained of, the contract could have been performed by the engineers in approximately three years, and that the engineers were free of any neglect, delay, error or default impairing appellee's right of action. Recovery was allowed for items involving mainly the damage suffered by the engineers through the city's unreasonable delay, duplication of work, and the audit of the construction accounts. A deduction of 10 per cent. was made upon the items allowed, upon the theory that they were incapable of exact calculation.

There is ample evidence in the record to support the findings of the District Court. The only two living members of the citizens' committee and the former city manager testified as to the performance of the work, its quality and the constant demands made by appellee for extra compensation. The plant was built for approximately $60,-000 less than the original estimate.

The city was bound not to subject the engineers to unreasonable delay, interference, or duplication of work. There was no time specified in which the work must be done. Under such circumstances the law implies that the work should be done within a reasonable time, and that the city would not unnecessarily interfere to prevent this. United States v. Smith, 94 U. S. 214, 217, 24 L. Ed. 115. That the work was done in pursuance of the plans as altered by the city, resulting in an increase of the work, gives rise to liability against the city. Wood v. Fort Wayne, 119 U. S. 312, 7 S. Ct. 219, 30 L. Ed. 416. The action for unreasonable interference is founded upon breach of contract. Gearty v. Mayor, etc., of City of New York, 171 N. Y. 61, 63 N. E. 804.

The principal defenses are:

(1) That the claim was barred by the Michigan statute of limitations.

(2) That the engineers waived their cause of action.

(3) That the claim was barred under article 16 of the Michigan Constitution.

(4) That the claim was barred by failure of the engineers, an Ohio corporation, to qualify to do business in Michigan.

As to the statute of limitations, the suit was begun on September 23, 1931. Extensive work was still being carried on under the contract in October and November, 1925, and the final estimate was made on May 2, 1927. The transaction was an entirety, requiring the performance of continuous service, and the action was not barred until six years after the conclusion of the service. Burch v. Woodworth, Adm'r, 68 Mich. 519, 36 N. W. 721; Carter v. Carter, 36 Mich. 207; Wisniewski v. Wisniewski's Estate, 254 Mich. 663, 236 N. W. 899. In the Carter Case, as here, the period of service was indefinite.

None of the items allowed by the District Court was barred by the statute of limitations.

Upon the question of waiver, the District Court found as a fact that the engineers did not waive, nor intend to waive, their cause of action. This finding is supported by the evidence. The engineers protested repeatedly to the citizens' committee, upon whose recommendations both the city manager and the commission acted. The engineers were requested by the members of this committee and by the city manager, that is by the responsible city representatives, to defer their claims until the work was completed. They had a right to rely upon the statements made by those in authority that they would receive compensation, and therefore they did not waive their cause of action by proceeding with the contract.

Section 3 of article 16 of the Michigan Constitution provides that neither the legislature nor any municipal authority shall grant extra compensation to any contractor after the service has been rendered. The provision does not apply to the cause of action pleaded nor bar recovery, as the damages prayed for are not damages or compensation for the work that the contract required, but for extra work. The words "the service" in the constitutional provision mean the contract service, and hence the section does not apply.

The corporation did not comply with section 10118, Compiled Laws of Michigan 1929, in effect in substantially the same language in 1919. It requires a foreign corporation to procure a certificate of authority from the secretary of state before it can lawfully do business within the State of Michigan. Such a foreign corporation, unauthorized to do business, is incapable of making a valid contract in Michigan (section 10120).

The agreement, by its terms, was a Michigan contract, but this fact is immaterial, if, as concluded by the District Court, the transaction constituted interstate commerce. Even though the corporation did business within the state, if the transactions which it carried on constituted interstate commerce, the right of action was not barred. Phillips Co. v. Everett, 262 F. 341 (C. C. A. 6); International Textbook Co. v. Pigg, 217 U. S. 91, 30 S. Ct. 481, 54 L. Ed. 678, 27 L. R. A. (N. S.) 493, 18 Ann. Cas. 1103. The interstate features of the work were recognized in the agreement, which stated that the principal office of the corporation was at Cleveland, Ohio. It provided for a resident engineer in Bay City, who would "keep in close touch with the engineers' home office through a system of daily reports," and that "Competent and responsible representatives from the main office of the Engineers" should visit the work for consultation, inspection and instruction. It required that the engineers in Cleveland should make and send to the committee certified copies of the monthly progress estimates. It was contemplated, then, that the detailed planning should be done in Ohio, and that there should be constant interstate communication.

The engineers did not contract to construct the plant. They furnished no materials; they did not do the actual erection. This work was performed by the twenty-one independent contractors.

The question as to what constitutes interstate commerce is a federal question. Under federal decisions, three tests exist for deciding whether a transaction exhibiting both interstate and intrastate features constitutes interstate commerce, namely:

(1) That the dominant characteristic of the transaction is interstate, overshadowing the intrastate features. Michigan Lubricator Co. v. Ontario Cartridge Co., Ltd., 275 F. 902 (C. C. A. 6); International Textbook Co. v. Pigg, supra; York Mfg. Co. v. Colley, 247 U. S. 21, 38 S. Ct. 430, 62 L. Ed. 963, 11 A. L. R. 611; Star-Chronicle Pub. Co. v. United Press Ass'n, 204 F. 217 (C. C. A. 8).

(2) That the contract is isolated, indicating a purpose not to carry on business in the state. Oakland Sugar Mill Co. v. Fred

**574**

W. Wolf Co., 118 F. 239 (C. C. A. 6);
Cooper Mfg. Co. v. Ferguson, 113 U. S. 727,
5 S. Ct. 739, 28 L. Ed. 1137.

(3) That the intrastate feature is "relevant and appropriate" to the interstate transaction. In this connection the complexity of the transaction is regarded as one of the controlling factors. York Mfg. Co. v. Colley, supra.

 This transaction met all three of these tests. The dominant characteristic of the work was the creative conception of the enterprise in the Cleveland office, made effective in Bay City. Over $40,000 were spent in Cleveland in merely drafting plans. The engineers had no office in Bay City. The contract required regular and continuous interstate communication and intercourse. International Textbook Co. v. Pigg, supra.

The contract did not indicate a purpose to carry on business in Michigan. The engineers, apart from this transaction, performed no other work in the state. While it extended over a long period of time, the project was isolated. Also the special provisions for inspection and supervision of the physical work within Michigan were subordinated to the interstate features of the contract within the doctrine of York Mfg. Co. v. Colley, supra. The engineers had guaranteed that the filtration plant would provide a palatable and wholesome water for domestic and commercial use. Paraphrasing the words of the York Mfg. Co. Case, were the provisions of the contract for the inspection and supervision at Bay City relevant and appropriate to the regular and constant intercourse and intercommunication between the states made necessary by the drafting of the plans and specifications in Cleveland? The integral connection of the work in Michigan with the work in Ohio is emphasized by consideration of the function of the plans sold, of their complexity, of the necessity of their application with mechanical skill and precision, in order that the desired result of the contract, the water works which had been planned, might be achieved.

The District Court correctly held that the transaction constituted interstate commerce, and that the right of action was not barred by failure of the corporation to qualify.

 The judgment is not excessive, and is affirmed.