### KIMBALL–KROUGH PUMP CO. v. JUDD et al.
#### No. 4500.
Court of Civil Appeals of Texas. Amarillo. Nov. 11, 1935.

Turner Adams and Syrian E. Marbut, both of Lubbock, for appellant.

Walter F. Schenck, of Lubbock, for appellees.

HALL, Chief Justice.

The appellant, Pump Manufacturing Company, sued A. M. Kruger and A. Judd. By its amended petition the appellant alleges that "it is a corporation, organized and existing under and by virtue of the laws of California, and having its domicile and place of business at Los Angeles, California, doing business by virtue of the laws of Congress regulating interstate commerce," and for cause of action alleges that plaintiff and the defendants executed a contract whereby plaintiff agreed to sell and the defendants agreed to purchase one Kimball-Krough Centrifugal Turbine Pump, which is described in detail in the petition.

The contract provides that the pump was to be shipped to the defendants from Los Angeles on or about September 5, 1930, and to be installed by the appellant on or about October 10, 1930. Defendants agreed to furnish, at their expense, all the materials required for the foundation, and to pay for building it. The contract price was $821.50, to be paid at the plaintiff's main office in Los Angeles, the sum of $300 cash with the order, and the balance evidenced by three promissory notes, for the sum of $173.84 due August 1, 1931, $173.83 due September 1, 1931, and $173.83 due October 1, 1931, respectively.

The contract was attached as an exhibit and made a part of the petition, and was signed by the plaintiff and "Green Ma-

chinery Company, by G. E. Green." It was also executed by Kruger and Judd.

Said contract contains numerous stipulations not pertinent to the issues involved here.

The plaintiff further alleged that the pump and the appliances had been delivered and installed, as provided in the contract. It was shown that certain credits had been made upon the notes, and the prayer is for judgment for the balance remaining unpaid, together with attorney's fees and costs of suit.

The defendant Judd filed a general demurrer and several special exceptions to the plaintiff's amended petition, and alleged that the pump was purchased by Kruger and that he signed the note as surety; that George Green agreed with Judd that if the latter would sign the notes, that he, Green, would also sign the same as surety. He alleges that he would not have signed any of the notes unless Green had agreed to sign them with him as surety. That A. M. Kruger was the sole principal on the notes, and agreed to get the signature of Green, along with Judd, as surety, all of which was well known to plaintiff at the time said notes were executed and received by it. That Green was acting as agent for plaintiff at that time; and plaintiff agreed that Green should and would sign the notes as surety, thus practicing a fraud on defendant, by reason of which fact this defendant is released from all liability, and plaintiff is estopped from procuring a judgment against him.

By cross-action, Judd sought to recover against George Green for any amount, or for half thereof, which might be recovered by plaintiff against him.

Green defaulted. Kruger died before the term of court prior to that at which the case was tried, and upon the suggestion of his death the action was then dismissed as to him.

■ At the February, 1935, term of the court, when the case was tried, Judd filed what is termed a "plea in abatement," in which it is alleged that no judgment had ever been rendered on the notes against Kruger, the principal obligor; that Kruger's estate was not insolvent, and that plaintiff could not lawfully maintain an action against the defendant until the representatives of Kruger's estate had been made parties. This plea was never presented to the court, and is, therefore, waived.

■ The case was tried to the court, without a jury. Judd's general demurrer to the amended petition was not urged, and was, therefore, waived. Southern Casualty Co. v. Morgan (Tex.Com.App.) 16 S.W.(2d) 533.

The court decreed that the plaintiff take nothing by its suit as against Judd, and also rendered judgment in favor of Green as against Judd.

■ The substance of the first proposition is that because the plaintiff pleaded that it was a corporation, organized and existing under and by virtue of the laws of California, having its domicile and place of business in Los Angeles, and was doing business by virtue of the laws of Congress regulating interstate commerce, and where the appellee failed to deny the legal rights of the appellant to sue and be sued in the state of Texas as a corporation, and where no evidence was introduced by appellee showing appellant's lack of authority to sue in the state of Texas as a corporation, it was fundamental error for the court to hold, as a matter of law, that the appellant had failed to show its right to maintain the suit in the state of Texas.

There is no merit in this proposition. No evidence was introduced by either party upon the issue of the right of the appellant to maintain its suit. The petition does not, upon its face, show that plaintiff is disqualified by reason of the provisions of the contract, or because it was doing business in Texas.

■ It was not shown that the installation of the pump, together with its appliances, could have been done by any ordinary mechanic. The reasonable inference from the contract is that it was a complicated machine, and required a skilled expert to install it upon the premises.

In York Mfg. Co. v. Colley, 247 U. S. 21, 38 S.Ct. 430, 62 L.Ed. 963, 11 A.L.R. 611, the Supreme Court of the United States held that where a foreign corporation sold and delivered machinery for an ice plant in another state, and sent an engineer to install it, the transaction was interstate commerce, and the provision as to the expert was germane thereto, and did not involve doing local business.

As said in vol. 1, Prentice-Hall's Corporation Service, par. 7151: "It has already been pointed out that when a foreign corporation enters into contracts, the subject-matter of which is wholly interstate

commerce, such corporation cannot be held to be 'doing business' within the contemplation of the foreign corporation laws, and the validity of the contract cannot be assailed on the ground that the statute has not been complied with. An examination of the leading cases shows that the courts have extended the protection of the commerce clause to cover not only a transaction which is purely interstate, but also one which if taken separately is unquestionably intra-state, but is in fact a relevant and appropriate part of an agreement in interstate commerce." Among numerous cases cited and supporting the text are: De Witt v. Berger Mfg. Co. (Tex.Civ.App.) 81 S.W. 334; J. B. Colt Co. v. McBurnett (Tex.Civ. App.) 1 S.W.(2d) 385; McCaskey Register Co. v. Mann (Tex.Civ.App.) 273 S.W. 1113; Southern Discount Co. v. Rose (Tex. Com. App.) 296 S.W. 482.

It appears that if the contract provides that the installation did not require the services of an expert, and that the work could have been and was performed by an ordinary mechanic, the seller of the goods or machinery has been held to be "doing business" in Texas and within the terms of R.S., title 32; chapter 19 (Vernon's Ann. Civ.St. art. 1529 et seq.), relating to Foreign Corporations. Buhler v. E. T. Burrowes Co. (Tex.Civ.App.) 171 S.W. 791; Ligon v. Alexander Film Co. (Tex.Com. App.) 55 S.W.(2d) 1030; Alexander Film Co. v. Boxwell (Tex.Civ.App.) 56 S.W.(2d) 676.

■ It is further held that occasional sales by a foreign corporation in the state do not constitute doing business therein within the provisions of the Texas law. There was no proof of any other sale by the appellant. It is further held that soliciting business in the state by an unlicensed foreign corporation is not doing business within the meaning of the law.

As said in vol. 1, Prentice-Hall's Corporation Service, par. 7120: "A corporation which employs salesmen, either resident or traveling, in a state in which the corporation has not qualified to do business, to solicit orders therein, either by display of samples or otherwise, all orders being subject to approval at the corporation's office without the state, and all goods applicable to such orders being shipped in pursuance thereof from without the state to the purchaser, or to the seller or his agent for delivery to the purchaser, is, as to such business so conducted, engaged in interstate commerce." See, also, vol. 1, Prentice-Hall's Corporation Service, pars. 7150, 7101, and 7042.

Reference to the findings of fact shows that the court concluded as a matter of law from the facts that the appellant was not entitled to maintain the suit, but the judgment does not appear to rest upon that ground. According to the recitals in the judgment, appellant was denied a recovery against Judd because he was induced to sign the note as a surety by the fraudulent promises of George Green, whom the court finds was an agent for plaintiff in selling the pump and in securing the notes and contract at the time the pump was sold.

■ It is our duty to affirm the judgment if a correct result has been reached, regardless of the grounds upon which the judgment has been rendered. Holland v. Nimitz, 111 Tex. 419, 232 S.W. 298, 239 S.W. 185; Cox, Inc., v. Humble Oil Refining Co. (Tex.Com.App.) 16 S.W.(2d) 285.

By the second proposition it is contended that where the record shows that Kruger died after the institution of the suit, and upon the suggestion of his death the cause was, by order of the court, dismissed as to Kruger, and a plea asking for the abatement of the suit was filed upon that ground, it was fundamental error for the court to hold as a matter of law that the appellee's plea in abatement was good, and should be sustained, and then go into the merits of the case and render judgment for the appellee therein.

We are willing to agree that this was an unusual proceeding, but the proposition is not fully sustained by the record. There is no order overruling the plea in abatement, but it appears from the court's finding of fact, filed after the term adjourned, that he considered the plea a good one.

Revised Statutes, art. 1986, provides that where the principal obligor in a contract is sued jointly with another party who may be liable thereon, that no judgment shall be rendered against the party primarily liable on the contract unless judgment be also rendered against the principal obligor, "except where the plaintiff may discontinue his suit against such principal obligor as hereinafter provided." The following article, 1987, provides as follows: "The assignor, indorser, guarantor and surety upon a contract, and the drawer of a bill which has been accepted, may be sued

without suing the maker, acceptor or other principal obligor, when the principal obligor resides beyond the limits of the State, or where he cannot be reached by the ordinary process of law, or when his residence is unknown and cannot be ascertained by the use of reasonable diligence, or when he is dead, or actually or notoriously insolvent." 6 Tex.Jur. 898; 1 Tex.Jur. 40, 41; R.S. art. 2082.

If the plaintiff had the right to sue Judd alone after the death of Kruger, it had the right to dismiss its action against Kruger upon suggestion of the latter's death. The death of a principal, under the statute, does not abate the suit as to sureties. If either party wanted the heirs and representatives of Kruger made parties, the duty rested upon such party to interplead them. Muenster v. Tremont Nat. Bank (Tex.Civ.App.) 46 S.W. 277; Planters' & Mechanics' Nat. Bank v. Robertson (Tex.Civ.App.) 86 S.W. 643, 645; Boggs v. Farmers' Fund of Texas (Tex.Civ.App.) 37 S.W.(2d) 205; Marine Banking & Trust Co. v. Federal Trust Co. (Tex.Civ.App.) 64 S.W.(2d) 409; 6 Tex.Jur. pp. 896-899, §§ 234 and 235.

By several propositions the appellant insists that even though Judd was induced to sign the notes as surety by the fraudulent promise of Green that he would also sign them as surety, these facts constitute no defense, and the court erred in rendering judgment for Judd because there is no evidence showing that the appellant had any notice of the fraud practiced by Green upon Judd, or of the condition under which Judd says he became a surety.

The question of fraud is only incidentally involved. The rights of the parties are controlled by the provisions of the Negotiable Instruments Act. Several decisions based upon the provisions of that law are to the effect that as between immediate parties and as regards a remote party, the delivery may be shown to have been conditional or for a special purpose, and parol evidence is admissible upon that issue. Testimony is admissible except when the note has passed into the hands of a holder in due course.

Revised Statutes, art. 5932, § 16, provides in part: "As between immediate parties, and as regards a remote party other than a holder in due course, * * * the delivery may be shown to have been con-

ditional, or for a special purpose only, and not for the purpose of transferring the property in the instrument." Rector v. Evans (Tex.Com.App.) 6 S.W.(2d) 105; Foster v. Security Bank & Trust Co. (Tex. Com.App.) 288 S.W. 438, 439; Barton v. Farmers' State Bank (Tex.Com.App.) 276 S.W. 177.

This provision of the Negotiable Instruments Law accords with the general rule as it existed at common law, which is that in suits by the original parties, or against those taking with notice or after maturity, parol evidence is admissible for the purpose of showing a conditional delivery of the instrument. For instance, it may be shown that the paper was not to become binding until the signature of another party had been secured. Wheeler & Wilson Mfg. Co. v. Briggs (Tex.Sup.) 18 S.W. 555; Fowler v. Hays (Tex.Civ. App.) 1 S.W.(2d) 1097.

When a note is delivered with the agreement that it is not to become effective until signed by another party, the effective date of the instrument is the date of the additional signature.

In Foster v. Security Bank & Trust Co., supra, the directors of the Security Bank & Trust Company executed a note payable to the bank in the sum of $43,931.90. According to their testimony, it was delivered to the cashier of the bank with instructions to write the name of the bank above the names of the four directors who made the note, and to write the word "Director" after each of the names. In that case, the Commission of Appeals, said: "Whether or not the payee in a promissory note may become the holder thereof in due course has never been expressly decided, we believe, in this state, but the question has been often before other courts, and the authorities are most respectable and numerous both ways upon the question."

After citing numerous authorities, pro and con, the commission proceeds to decide the question, not according to the weight of the authorities, but upon the interpretation of the Negotiable Instruments Law in this state, and quotes section 52 of article 5935 as follows: "A holder in due course is a holder who has taken the instrument under the following conditions: 1. That it is complete and regular upon its face; 2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if

such was the fact; 3. That he took. it in good faith and for value; 4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it," and concludes from this language that before one can be a holder in due course, the note must have been negotiated to him by one as to whose title he had no notice of any infirmity. Section 30 of the act (article 5934) is further quoted as follows: "An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof. If payable to bearer it is negotiated by delivery. If payable to order it is negotiated by the indorsement of the holder completed by delivery," and then holds that there must be an instrument with all the elements of completeness in form and other requirements affecting the validity of its issuance, quoting further as follows from section 16 of the act (article 5932): "Every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto," and it is said that until there has been a delivery of the instrument it is no more than the offer of a contract, for a negotiable instrument is not binding on any one, and the question is not affected by its coming into the hands of the intended payee, quoting further from section 16 as follows: "As between immediate parties, and as regards a remote party other than a holder in due course, the delivery, in order to be effectual, must be made either by or under the authority of the party making, drawing, accepting or indorsing, as the case may be; and in such case the delivery may be shown to have been conditional, or for a special purpose only, and not for the purpose of transferring the property in the instrument. But where the instrument is in the hands of a holder in due course, a valid delivery thereof by all parties prior to him so as to make them liable to him is conclusively presumed."

■ This section is construed as a refusal by the Legislature to conclude the question of delivery as between the immediate parties to the instrument, and it is said it conclusively presumes a delivery by each prior owner where the note is in the hands of a holder in due course, thus clearly showing that the payee as an immediate party to the instrument cannot be a holder in due course.

After further discussion, the conclusion is reached that the makers of the note were entitled to prove the condition upon which it was executed and given to the cashier of the bank.

The record in the instant case shows that three notes were originally executed for the same amounts, bearing the same date as the notes sued upon, and were executed by Kruger, Judd, and George Green as an individual. For some reason which has not been explained, these notes were never accepted by the company, but at the trial were introduced in evidence by Judd's attorneys. The three notes sued upon also bear date of October 10, 1930, are identical with the original notes in their stipulations, and are executed by Kruger and Judd only. Upon the back of each note, appears this indorsement: "For value received, I hereby guarantee payment of the within obligation, and all renewals and extensions thereof, and I hereby waive presentation, demand, protest, notice of protest and notice of non-payment. (Signed) Green Machinery Company by G. E. Green."

■ Both series of notes were made payable to Kimball-Krough Pump Company. According to the holding in the Foster Case, supra, the appellant in this case is an immediate party to the instrument, and parol evidence of the condition was admissible, and the appellant, therefore, took the notes subject to the condition imposed by Judd to the effect that Green should also sign the notes as surety. This rule has been adhered to in numerous decisions since then: Williams v. Jones (Tex.Com.App.) 52 S.W.(2d) 256; McAdams v. Panhandle Mutual Hail Ass'n (Tex.Civ.App.) 44 S.W.(2d) 1005; Republic Supply Co. v. Barrow (Tex.Civ. App.) 41 S.W.(2d) 475; Shaw v. Nolen (Tex.Civ.App,) 23 S.W.(2d) 445; Shaw v. Avant (Tex.Civ.App.) 23 S.W.(2d) 447; Davis v. Jarnigan (Tex.Civ.App.) 59 S.W. (2d) 281; J. E. Chambers & Co. v. Oakes (Tex.Civ.App.) 80 S.W.(2d) 482.

While the court based its judgment upon the alleged fraud, which may or may not be supported by sufficient evidence, nevertheless, under the rule announced in these cases, the controversy has been properly disposed of, and the judgment is affirmed.