**WANDEL WESTERN, Inc. v. CARAWAY.**

**Civ. A. No. 4620.**

United States District Court
N. D. Texas, Dallas Division.

June 7, 1952.

Ungerman, Hill & Ungerman, Dallas, Tex., for plaintiff.

Thompson, Knight, Wright & Simmons, Dallas, Tex., for defendant.

ATWELL, Chief Judge.

The plaintiff sues for $3,200, being the balance due on a contract for certain lighting paraphernalia which was fabricated and shipped from its plant in New York City to Texas for installation, and connection.

The contract called for $7,200, $4,000 of which was paid in cash, the balance to be paid when finished. A certain portion of the apparatus was to be returned to the seller.

It is contended by the plaintiff that the order was completed and is now in use by the defendant. That the completion was made under the direction of plaintiff's engineer, but the work was done by employees hired by the defendant and paid for by the defendant.

There appears to be no substantial difference between the plaintiff and the defendant as to the merit of the apparatus, nor as to its proper installation. Except, that it is now suggested by the defendant that some lights are visible when they should be camouflaged. The defense is made that jurisdiction depends upon diversity of citizenship, plaintiff being a New

York corporation, and the defendant being a resident of Texas, and that the plaintiff has no permit to do business in Texas, and, under the statute of Texas, it may not enter a Texas court, which is applicable to the national court, for the securing of a judgment.

It is conceded that the plaintiff has no permit to do business in Texas, and I find from the testimony, that it is not doing business in Texas, but is engaged in interstate commerce and was so engaged in interstate commerce, and not in intrastate commerce, at the time of the shipment of the apparatus and its installation. It has no agent in Texas and does not come within the reach of the decisions which make clear what "doing business" in the state means.

The defendant contends that such cases as North American Service Company v. A. T. Vick Company, Tex.Civ.App., 243 S.W. 549, which was the erecting of billboards, where the plaintiff, after the erection of such billboards along a public highway, was to receive so much per month for a period of twenty-four months, the erecting company agreeing to inspect and keep the boards in good shape; and the case of Motor Supply Company v. General Outdoor Advertising Company, Tex.Civ.App., 44 S.W.2d 507, which was also a billboard advertising contract for the monthly servicing and keeping the same in order, where it was held that it was not interstate commerce, but intrastate commerce, and since the plaintiff was a foreign corporation without a permit, that it might not enter the Texas court to collect its debt; and, finally, the case of Browning v. City of Waycross, 233 U.S. 16, 34 S.Ct. 578, 580, 58 L.Ed. 828, which is commonly known as the "lightning-rod case," wherein the foreign plaintiff was charged with having engaged in intrastate commerce rather than interstate commerce by selling and placing the rods in place. Chief Justice White held that Browning being charged in a municipal court with violating an ordinance which imposed a tax upon lightning-rod agents, or, dealers, for erecting lightning-rods within the corporate limits of the city of Waycross, was properly convicted since the placing of the rods was an important part of the sale. The Chief Justice, however, in the concluding paragraph of his opinion stated that, "Of course we are not called upon here to consider how far interstate commerce might be held to continue to apply to an article shipped from one state to another, after delivery and up to and including the time when the article was put together or made operative in the place of destination in a case where, because of some intrinsic and peculiar quality or inherent complexity of the article, the making of such agreement was essential to the accomplishment of the interstate transaction."

Against such cases is the line of reasoning which is discoverable and must be followed in the case at bar, on the facts which I have already found, such as Southern Discount Company v. Rose, Tex.Com.App., 296 S.W. 482; which is the acetylene case where the foreign corporation had no permit to do business in Texas. The gas plant consisted of a generator and water heater, and tank, and heating and lighting fixtures, and appliances. The sale was made through the soliciting agent in Texas. The buyer was to pay the freight on the shipment, and the wages of the service man who was to install the plant in the buyer's home.

Chief Justice Cureton reasons, as he overruled the judgments of the County Court, and the Court of Civil Appeals, that the Federal Constitution confers on Congress the exclusive power to regulate interstate commerce, and the state has no authority to enact a law interfering with this power, and that it may not deny the seller the right to sue for the purchase price as this would be a regulation of interstate commerce.

To the same effect is the case of Abner Manufacturing Company v. Nevels, Tex.Civ.App., 118 S.W.2d 607. Likewise, the case of North v. Mergenthaler Linotype Company, Tex.Civ.App., 77 S.W.2d 580, wherein a foreign corporation, without a permit, had canvassers who submitted orders for its approval, and an installer who erected machinery it sold and which shipped all goods sold from outside the state direct to purchaser, is not engaged in business within the state, within the statute, so as to require it to obtain a permit before it can maintain a suit.

Also, the case of York Manufacturing Company v. Colley, 247 U.S. 21, 38 S.Ct. 430, 62 L.Ed. 963, which was an interstate contract for the sale of a complicated ice-making plant, it was stipulated that the parts should be shipped into the purchaser's state, and the plant there assembled, and tested, under the supervision of an expert to be sent by the seller. The purchaser agreed to pay such expert a per diem, while so engaged, and to furnish mechanics for his assistance, and their obligation to accept the plant was made dependent on the test. It was held that the services were germane to the transaction as an interstate contract, and did not involve the doing of local business subjecting the seller to regulations of Texas concerning foreign corporations.

The case of Woods v. Interstate Realty Company, 337 U.S. 535, 539, 69 S.Ct. 1235, 93 L.Ed. 1524, is hardly in point insofar as it benefits either the plaintiff or the defendant. It reviews the power of the state to prevent or keep out of the national court a litigant who is barred from the state court. It also determines that one who engages as a broker of the sale of property within a state, has certain limitations upon his rights, both as a litigant, and otherwise.

What I have said thus far, gentlemen, I find as facts.

 In addition to the facts that I find which bear directly, of course, upon the motion to dismiss, as well as upon the merits, I find that this is an intricate piece of machinery, with a series of reflectors, and lights, and connections, and pipe, so that it required, and does require a learned engineer to place them in proper connection, and proper position.

I find as a fact that a Mrs. Davey was employed by the defendant to represent him in this placing, and installation, and that she did do that, and worked with the engineer, Leonard, who was sent here, and under the contract of the plaintiff, to install and connect; and that the apparatuses were installed. That after such installation, with that particular critic assisting and looking, then Mrs. Caraway also had a say about it, and then Mr. Caraway; and, ultimately and finally, their judgment is, and was, that it was not satisfactory to them. But, it had already been installed and placed, and is still installed and placed. ,

Likewise, there is testimony from which the Court is bounden to find that the original contract which was made in 1951 called for, and there was shipped under it, approximately $11,000, or more, of this apparatus. That an expert from New York came and began to install, which was not at all satisfactory, and then a new contract was made, as I have already indicated and found, whereby the subsequent price was $7,200; $4,000 of which was to be cash, and which cash was paid, leaving the balance of $3,200 and certain machinery or apparatus, which was not used, to be returned.

I believe, gentlemen, that under these facts, that the plaintiff is entitled to recover $3,200 and the machinery, or apparatus which the defendant has, and which should be returned, and which are not his. He is not entitled to them under any situation.

I doubt, Mr. Hill, that you are entitled to recover any attorney fees, however, for, I doubt that the statute of Texas, which authorizes that, fits this case exactly.