The case authority on which the majority relies for the proposition that the assembly and installation of the boiler system at the University of Montevallo were incident and necessary to the interstate sales contract is distinguishable on some important bases.
The first case the majority discusses is Puffer ManufacturingCo. v. Kelly, 198 Ala. 131, 73 So. 403 (1916). While the Court in Puffer concluded that the assembly and installation of a soda fountain was incident to the sale, the Court added:
 "But this conclusion may be defeated by various considerations, viz., by the character of the article as a permanent improvement to the freehold, by the nature and extent of the labor required for its adaptation and preparation for use, and the time and conditions under which it is turned over to the purchaser after its arrival." 198 Ala. at 136, 73 So. at 405.
When the considerations stated above are applied to the facts of this case, a result different from that in Puffer ought to be reached. Here, Industrial Boiler took approximately ten months to assemble and install the system at Montevallo. The system itself measured 40 feet wide, 60 feet long, and 25 feet high, and could hardly be regarded as anything but a permanent improvement or fixture. During the installation process, Industrial Boiler contracted with a local crane service and leased a forklift and a portable air compressor. It also hired three to five local residents to perform temporary manual labor. It is difficult to see how all of this was merely incident to the contract for the sale of the boiler.
Furthermore, the fact that Industrial Boiler's contracts with local merchants were "reasonable and incidental" to the performance of its contract with Wallace does not make Industrial Boiler's installment contract with Wallace any less intrastate in character. In fact, based on the considerations outlined in Puffer, supra, set out above, the necessity for such local contracts, as well as the length of time the assembly and installation required, and the permanent nature of the boiler system further support the conclusion that the contract was intrastate in character.
The majority also relies on and quotes extensively from YorkManufacturing Co. v. Colley, 247 U.S. 21, 38 S.Ct. 430,62 L.Ed. 963 (1918). Given the common meaning of the terms "relevant" and "appropriate," I do not dispute that the contract for the assembly and installation of the boiler system was "relevant" and "appropriate" to its sale, especially in view of Industrial Boiler's low bid; however, being "relevant" and "appropriate" in an ordinary sense does not make the contract "necessary" and "incidental" to the sale, nor does it nullify the other considerations that point up the intrastate character of the contract and its performance. It seems to me that the following language taken from York Manufacturing Co.,supra, which attaches a narrower definition of "relevant" *Page 1157 
and "appropriate" in the context of these cases, nevertheless indicates a recognition by that Court of the "necessity" that the manufacturer/seller perform the assembly and installation of the machinery and test its efficiency where the machinery is complex and assembly is required to be performed with the expertise it is assumed only the manufacturer/seller would have:
 "The only possible question open therefore is, was the particular provision of the contract for the service of an engineer to assemble and erect the machinery in question at the point of destination and to practically test its efficiency before complete delivery relevant and appropriate to the interstate sale of the machinery? When the controversy is thus brought in last analysis to this issue there would seem to be no room for any but an affirmative answer. Generically this must be unless it can be said that an agreement to direct the assembling and supervision of machinery whose intrinsic value largely depends upon its being united and made operative as a whole is not appropriate to its sale. The consequence of such a ruling if made in this case would be particularly emphasized by a consideration of the functions of the machinery composing the plant which was sold, of its complexity, of the necessity of its aggregation and unison with mechanical skill and precision in order that the result of the contract of sale — the ice plant purchased — might come into existence. . . ." (Emphasis added.) 247 U.S. at 24-26, 38 S.Ct. at 432.
Thus, as I interpret this passage, it is the requirement that the contract for installation, etc., be necessary that makes itrelevant and appropriate.
It is precisely this line of reasoning that was applied by the court in In re Delta Molded Products, Inc., 416 F. Supp. 938
(N.D. Ala. 1976), affirmed, 571 F.2d 957 (5th Cir. 1978), on which the majority relies. In Delta, the court emphasized the fact that, in that case, no one else in Alabama was available to assemble and install the machinery in question:
 "These activities are totally essential to the basic contract but are only incidental thereto and do not constitute intrastate commerce. . . . The record discloses that there were no persons to be found in Alabama with the required expertise to perform this work. The agreement by IMPCO to perform this assembly, startup, maintenance and repair work was totally essential to the accomplishment of the interstate transaction (the sale and purchase of the machines) agreed to by IMPCO and DELTA; and without such an agreement, DELTA could not within reason have purchased the machines. With no other source of obtaining such essential services, no sale would have been made by IMPCO. Therefore, it is the opinion of this court that the performing of these services does not constitute intrastate commerce, but is merely incidental to the basic interstate transactions, although essential thereto. It is not a separate distinct undertaking by IMPCO, but merely a part of the interstate agreement.
". . . .
 ". . . Such services cannot be found available in the open market place and must be provided by the manufacturer (seller)." (Emphasis added.) 416 F. Supp. at 943-944.
These factors are not present here, nor is there an allegation that only Industrial Boiler possessed the required "mechanical skill and precision" necessary to make the boiler system operative. In fact, the contrary is true. In its opinion, the majority points out that Industrial Boiler "has certain competitors capable of providing these services," but that "Industrial Boiler was awarded the contract with Wallace on thebasis of its low bid." (Emphasis added.) This hardly meets the "necessity" test set forth in In re Delta Molded Products,supra, and implied by the Court in York Manufacturing Co.,supra. Moreover, it appears that the assembly and installation work was a "separate distinct undertaking" *Page 1158 
by Industrial Boiler, and not "merely a part of the interstate agreement."
The majority gives no other reasons to substantiate its conclusion that Industrial Boiler's assembly and installation services were "necessary and incidental to the interstate sale of the boiler [system]." In fact, there being others available to perform these services, Industrial Boiler's activities were not necessary nor merely incidental. Since the facts of this case do not fit the exceptions carved out by those authorities upon which the majority relies, I would hold that Industrial Boiler's assembly and installation contract, and the performance of it, were intrastate in character. Accordingly, Industrial Boiler should have qualified to do business in Alabama in order to enforce its contracts in the courts of this state. For these reasons, Wallace and Hartford's motion for summary judgment was improperly denied.
FAULKNER, J., concurs.