Sea Ray Boats, Inc. ("Sea Ray"), brought this action, seeking recovery against North Alabama Marine, Inc. ("NAMI"), and Daniel E. Boone for default under a security agreement between NAMI and Sea Ray Boats' assignor, Sea Ray Credit Corporation ("SRCC"), and a personal guaranty of the agreement by Boone. NAMI counterclaimed against Sea Ray, alleging tort and contract claims. The trial court directed a verdict for Sea Ray on Sea Ray's claims for breach of the financing agreement and the personal guaranty of $60,712.00, plus interest, and against NAMI on all its counterclaims except those relating to Sea Ray's alleged breach of contract. The case was submitted to the jury on Sea Ray's claim on an open account and on NAMI's counterclaims for breach of contract. The jury returned a verdict for Sea Ray of $8,473.48 on the claim on an open account. The jury returned a verdict for NAMI of $79,660.59 on its counterclaim for breach of contract. The defendants appealed, and the plaintiff *Page 600 
cross-appealed from the judgment entered on the verdicts. We affirm.
Sea Ray is a corporation engaged in the worldwide manufacture and distribution of boats, with manufacturing plants in several states and overseas. There are no plants in Alabama. NAMI was one of two Sea Ray dealers in Alabama. SRCC is a wholly owned subsidiary of Chrysler First (which is a wholly owned subsidiary of Chrysler Corporation), and is engaged in the financing of inventories for dealers of Sea Ray. There is no corporate connection between Sea Ray and SRCC. Neither Sea Ray nor SRCC is licensed as a foreign corporation in Alabama.
SRCC maintains an agent in Alabama to perform monthly inventories at NAMI and receive payment. The agent services 40 accounts of SRCC's parent corporation, Chrysler First, in addition to the single SRCC account.
NAMI is an Alabama corporation with its place of business in Huntsville, Alabama. NAMI was an authorized dealer of Sea Ray's products from 1984 until August 12, 1986. During this time, employees and agents of Sea Ray came into Alabama occasionally to inspect the NAMI facility, meet with NAMI service personnel, assist in sales activities and promotional functions, and assist with repair and maintenance of Sea Ray boat products. Boone is the sole owner of NAMI.
During the summer of 1984, Boone was contacted by Sea Ray concerning the possibility of selling Sea Ray products. After attending the annual dealer conference in Wisconsin, Boone ordered NAMI's first supply of 1985 model boats in the fall of 1984. During the dealer conference the following summer, Boone signed a "dealer agreement."
On April 9, 1985, NAMI executed a floorplan and financing agreement with SRCC. The financing agreement, Boone's personal guaranty, and the UCC-1 security form were signed by Boone in Alabama and mailed to SRCC in Ohio. SRCC perfected its security interest by filing the UCC-1 with the Alabama Secretary of State. Whenever NAMI received a boat shipped by Sea Ray, SRCC would then wire transfer funds from its bank in California to Sea Ray to pay for the boat. When the boat was sold, NAMI would then make payment to the SRCC representative, who visited on a monthly basis.
Boone was informed at a dealer conference held in Knoxville, Tennessee, in July 1986, that to remain a dealer for the following year he would have to purchase twice as many boats as he had the previous year. Boone was disinclined to accept the new requirements, and he did not sign a new dealer agreement at the Knoxville dealer conference or place an order for boats. The dealer agreement between Sea Ray and NAMI expired on July 31, 1986.
On August 12, 1986, Sea Ray had NAMI's inventory picked up. The SRCC agent was checking NAMI's inventory during the same day that the boats were being picked up. He determined that NAMI was "out of trust" on six boats. Boone admitted that he owed the money to SRCC. NAMI had accumulated dealer incentives and reserve funds that were being held by Sea Ray. Sea Ray acknowledged owing NAMI $25,652.35.
On October 29, 1986, SRCC assigned all its right, title, and interest in and to the obligations of NAMI to Sea Ray.
NAMI and Boone contend that Sea Ray, as an unlicensed corporation doing business within Alabama, is precluded from recovery against Alabama residents in an action ex contractu
based upon its claims and the claims of its assignor, SRCC, which has also failed to qualify as a foreign corporation in Alabama.
Sea Ray contends that Sea Ray and SRCC were clearly within the interstate commerce exception to the requirement that out-of-state corporations must qualify in order to avail themselves of the state courts in the enforcement of contracts. Sea Ray also contends that NAMI's counterclaim for breach of contract was improperly submitted to the jury.
Section 232 of the Alabama Constitution 1901, and Ala. Code 1975, § 10-2A-247 and § 40-14-4, bar a foreign *Page 601 
corporation not qualified to do business in Alabama from enforcing its contract in the courts of this state. These laws apply, however, only when the business conducted in this state by the non-qualified corporation is intrastate in nature.Wallace Construction Co. v. Industrial Boiler Co.,470 So.2d 1151 (Ala. 1985); Johnson v. MPL Leasing Corp., 441 So.2d 904
(Ala. 1983). A non-qualified foreign corporation is not barred from enforcing its contracts in Alabama when its activities within this state are incidental to the transaction of interstate business. Wallace; Johnson, supra. Under the Constitution of the United States, a state cannot prohibit foreign corporations from conducting interstate business within its borders. Kentucky Galvanizing Co. v. Continental CasualtyCo., 335 So.2d 649 (Ala. 1976); Article I, § 8, cl. 3, United States Constitution.
The dealer agreement between NAMI and Sea Ray required,inter alia, the advertising and display of Sea Ray products, the maintenance of inventories, the servicing of Sea Ray products, and the maintenance of NAMI's place of business within Alabama. NAMI argues that these activities are sufficiently intrastate in nature to subject Sea Ray to the constitutional and statutory prohibitions against unqualified foreign corporations' conducting business in Alabama. However, all the activities listed above were the responsibility of NAMI. Sea Ray's activities were limited to the manufacture and shipment of its products into the state, together with occasional assistance and supervision consistent with and incidental to the promotion and sale of its goods in interstate commerce.
In addition to the claim for open account, Sea Ray, as the assignee of SRCC, also seeks to enforce the financing agreement and personal guaranty against NAMI and Boone. The question, therefore, becomes whether SRCC would have been precluded from enforcing these contracts because of its failure to qualify as a foreign corporation in Alabama. If so, then Sea Ray is also precluded from enforcing them, pursuant to Ala. Code 1975, § 10-2A-247. This statute provides that contracts entered into in this state by unqualified foreign corporations "shall be held void at the action of such foreign corporation or any personclaiming through or under such foreign corporation by virtue ofsaid void contract or agreement." (Emphasis added.)
SRCC employed an agent in Alabama to oversee performance of its contract with NAMI. This agent also handled 40 accounts of Chrysler First, SRCC's parent company. The agent visited NAMI, his sole SRCC account in Alabama, once a month. There was no office, building, or property owned or operated in Alabama by SRCC. The agent's activities were limited to checking inventory and receipt of payments on behalf of SRCC from NAMI. NAMI and Boone argue that these activities are sufficient to subject SRCC to the statutory qualification requirements, thereby precluding enforcement of the financing agreement and personal guaranty by SRCC's assignee, Sea Ray. We disagree.
Simply overseeing the performance of contracts inside the state will not preclude a corporation engaged in interstate commerce from enforcing such contracts in our courts. Such a rule would be an unacceptable impediment to the flow of interstate commerce. In York Mfg. Co. v. Colley, 247 U.S. 21,38 S.Ct. 430, 62 L.Ed. 963 (1918), the U.S. Supreme Court held that the right to make an interstate commerce contract "includes in its very terms the right to incorporate into such contract provisions which are relevant and appropriate to the contract made." 247 U.S. at 24, 38 S.Ct. at 431. Because monthly inventory checks and receipt of payment in state are clearly relevant and appropriate to the providing of financing for the purchase and sale of goods in interstate commerce, we find that the activities of SRCC in Alabama were not intrastate in nature, but were necessary and incidental to the interstate financing agreement.
We therefore hold that the activities conducted within Alabama by Sea Ray and SRCC were merely incidental to the transaction of interstate business. Accordingly, *Page 602 
Sea Ray is not precluded by the laws of this state from enforcing contracts individually or as assignee of SRCC in Alabama.
Sea Ray next contends that the trial court erred in failing to direct a verdict in Sea Ray's favor on count I of NAMI's counterclaim for breach of contract, because, it says, the uncontradicted evidence shows that there was no contract in existence on August 12, 1986, when the alleged breach took place.[1] Boone and NAMI admit that there was a written contract that expired on July 31, 1986, but argue that the parties maintained a dealership relationship prior to the execution of that written contract and that NAMI continued to serve as a dealer subsequent to the stated expiration date of that written contract. They contend that sufficient evidence of the conduct of the parties, the circumstances relating to their relationship, and the representations of Sea Ray agents was presented to the jury for it to find the existence of an implied-in-fact contract between the parties after the expiration of the written contract.
When reviewing denial of a motion for directed verdict, we must view the evidence in a light most favorable to the nonmoving party, and if, by any interpretation, the evidence can support any inference supportive of a conclusion in favor of the non-moving party, then the refusal to direct a verdict is proper. Adams v. Travelers Ins. Co., 494 So.2d 401 (Ala. 1986).
The dealership arrangement beginning in 1984 between NAMI and Sea Ray was not expressed in writing. The first dealership agreement was signed in July 1985. The terms of that contract provided for its expiration on July 31, 1986. However, evidence was presented tending to show that all the obligations incident to the contract had not been discharged by the parties prior to the expiration of the dealership agreement. In addition, NAMI claims that an implied contract had arisen from the facts, circumstances, and actions of the parties, so that the expiration of the written dealership agreement is not determinative of the relationship in existence on August 12, 1986. These factual issues were properly presented to the jury for determination.
Because we find that there was at least a scintilla of evidence presented from which a jury could have found remaining obligations under the dealership agreement and/or the existence of an implied contract, we hold that it was not error for the trial court to deny the motion for directed verdict and to submit NAMI's breach of contract claims to the jury.
Accordingly, the judgment of the trial court is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, ADAMS and STEAGALL, JJ., concur.
[1] The jury rendered a general verdict of $79,660.59 on NAMI's breach of contract claims. Sea Ray admits liability to the extent of certain dealer incentives and reserve funds claimed in count 5 of NAMI's counterclaim, and does not deny that a contract was in existence at the time these monies were earned by NAMI.