COLUMBUS SERVICES, INC., a Pennsylvania corporation, Plaintiff,

v.

PREFERRED BUILDING MAINTENANCE, INC., a Michigan corporation, and Richard D. Brown, John E. Bremer, Forrest S. Tarr, Wally B. Gast, Raymond A. Gast, and Fred C. Gast, Defendants.

Civ. A. No. 5388.

United States District Court
W. D. Michigan, S. D.

June 30, 1967.

Warner, Norcross & Judd, Grand Rapids, Mich., Harold S. Sawyer, Grand Rapids, Mich., of counsel, for plaintiff.

Law, Fallon, Weathers, Richardson & Dutcher, Grand Rapids, Mich., Niel A. Weathers, Grand Rapids, Mich., of counsel, for defendants.

FOX, District Judge.

## OPINION

In an action for breach of one contract and interference with another, defendants have moved, pursuant to Rules 12(b) (6), 12(c) and 56 of the Federal Rules of Civil Procedure, to dismiss plaintiff's complaint, on the grounds that the contracts are void, illegal, and unenforceable.

Plaintiff is a Pennsylvania corporation. Defendant Preferred Building Maintenance, Inc. is a Michigan corporation, which before June 7, 1965, had been known as Columbus Services of Michigan, Inc. All of the individual defendants are officers and/or stockholders of the defendant corporation.

Plaintiff is engaged in the ownership and operation of a custodial services business which includes, among other things, providing consultant services to individuals or firms desiring to establish janitorial contract service companies. Prior to its first contract with defendants, plaintiff had been engaged in a janitorial service business in Western Pennsylvania.

On May 15, 1963, plaintiff entered into a contract with corporate defendant, at that time known as Columbus Services of Michigan, Inc., whereby plaintiff in addition to providing the name "Columbus," undertook to supply corporate defendant with complete information on the operation of a custodial service business, and to hire and train a district manager who would reside in Grand Rapids, Michigan, and who would be qualified to manage on a full-time basis corporate defendant's business. Corporate defendant agreed to reimburse plaintiff for the salary of the district manager and expenses of other personnel sent by plaintiff to Michigan. The original term of the contract was five years, although defendant was given an option of cancelling the contract on six months' notice. The contract provided that plaintiff would receive seven percent of the gross receipts as compensation.

In the spring of 1964, plaintiff and Lear Siegler, Inc. of Grand Rapids, Michigan, reached an agreement providing that plaintiff would furnish consulting services for janitorial work at the Lear Siegler plant. Shortly thereafter plaintiff agreed to negotiate a new contract

which would allow corporate defendant to participate in the proceeds of consulting contracts such as the Lear Siegler contract. Both plaintiff and defendant agreed that the term of the contractual arrangement between them should be extended in the new contract.

On June 1, 1964, the contract (Exhibit A attached to plaintiff's complaint and hereinafter referred to as "Contract A") was executed. Contract A restated generally the terms and conditions of the 1963 contract. Relevant changes in Contract A included an increase of the life of the contract to fifty years by automatic renewals at the end of each five year period, an addition of certain covenants restricting competition in the event of termination, and a clause providing that corporate defendant would receive forty percent of the net profits from consulting contracts and sixty percent of the net profits of janitorial supplies sold by plaintiff to parties under consulting contracts. Plaintiff was also authorized to name two members to corporate defendant's Board of Directors.

To fulfill its obligations under both the 1963 and 1964 contracts, plaintiff entered into an employment contract (Exhibit B attached to plaintiff's complaint and hereinafter referred to as "Contract B"), with Carl Miller, on May 15, 1963, in which Miller agreed to manage the corporate defendant's business.

After performing under Contract A for almost a year, the corporate defendant terminated its relationship with plaintiff in May of 1965. Miller also terminated his relationship with plaintiff at approximately the same time.

In its complaint, plaintiff alleges in Count I that as a result of its breach of Contract A, corporate defendant has continued to engage in business, utilizing plaintiff's trade secrets, know-how, and techniques. In Count II plaintiff alleges defendants wrongfully and intentionally induced Miller to break his contract (Contract B), and that "at defendants' request Carl Miller, to plaintiff's detriment, did divulge valuable information of a confidential and unique character, including trade secrets and techniques to defendants."

Defendants contend in the first instance that the contracts are void and unenforceable because plaintiff failed to qualify to do business in the State of Michigan. The following statutes are pertinent:

Section 93 (MSA Section 21.94) Comp.Laws Mich.1948, § 450.93 [P.A. 1956 No. 97]:

"It shall be unlawful for any foreign corporation to carry on its business in this state, until it shall have procured from the Michigan corporation and securities commission a certificate of authority for that purpose. * * *"

Section 94 (MSA Section 21.95) Comp.Laws Mich.1948, § 450.94 [P.A. 1961, No. 15]:

"When such corporation has fully complied with the provisions of this act, the Michigan corporation and securities commission may issue to such corporation a certificate of authority to carry on such business in this state * * *."

Section 95 (MSA Section 21.96) Comp.Laws Mich.1948:

" * * * No foreign corporation shall be capable of making a valid contract in this state until it shall have fully complied with the requirements of the laws of this state with respect thereto, and at the time holds an unrevoked certificate to that effect from the Michigan corporation and securities commission. * * *"

See also the following provision of the Michigan Revised Judicature Act:

Section 2021 (MSA Section 27A.-2021) Comp.Laws 1948, § 600.2021 [P.A.1961 No. 236]: "When, by the laws of this state, any act is forbidden to be done by any corporation * * * without express authority by law, and such act was done by a foreign corporation, the foreign corporation shall not maintain any action founded upon such act, or upon any liability or obligation, express or im-

plied, arising out of, or made or entered into in consideration of such act."

Since it is undisputed that plaintiff did not qualify to do business in Michigan as required by M.S.A. 21.94, the only issue for our consideration is whether plaintiff's business activities in Michigan could be classified as either interstate or intrastate commerce.

Plaintiff cites Bay City v. Frazier, 77 F.2d 570 (C.A.6, 1935), as authority for holding that its activities in Michigan constituted interstate commerce. In Bay City the court held that the activities of Ohio engineers engaged by defendant to design and supervise the erection of a complete water works were interstate rather than intrastate in character. In reaching this decision, the court cited the following tests for determining "whether a transaction exhibiting both interstate and intrastate features constitutes interstate commerce, * * *

"(1) That the dominant characteristic of the transaction is interstate, overshadowing the intrastate features. * * *

"(2) That the contract is isolated, indicating a purpose not to carry on business in the state. * * *

"(3) That the intrastate feature is 'relevant and appropriate' to the interstate transaction. * * *" 77 F.2d at 573–574.

Bay City involved an isolated project which was of short duration in comparison to the instant case. The bulk of work was performed in Ohio where the plans were conceived and drafted. The engineers' only interest in Michigan was to see that the water works was built in accordance with their plans and specifications. They did not intend to, nor did they carry on a business in Michigan.

In the case at bar, plaintiff was involved not only in janitorial service contracts and consulting services, but it also engaged in selling cleaning supplies. Through these varied activities plaintiff intended to establish a major janitorial service business in Michigan which according to the provisions of Contract A was to last fifty years.

The business of cleaning premises for commercial and industrial customers is strictly an intrastate and local venture. Plaintiff managed the Michigan corporation through its agent, Carl Miller. In accordance with plaintiff's directions he hired, fired and directed the employees of the corporate defendant. Miller in effect acted independently of the individual defendants.

Paragraph 12 of Contract A provides that the "consultant [plaintiff] will prepare and submit all bids for job proposals, but the owner [corporate defendant] may submit bids also if the Owner obtains the approval of the Consultant." Control of activities such as this clearly indicates the extent of plaintiff's participation in the management of defendant's business.

Plaintiff's sales of janitorial supplies and its consulting contract with Lear Siegler also evidence the intrastate nature of plaintiff's activities.

Paragraph 18 of Contract A provides:

"*18.* Whenever the Consultant obtains a contract involving Consultant services and the Consultant also obtains the contract to furnish materials, supplies equipment, merchandise and other items needed by the Consultant's customer for the performance of custodial services by the customer's employees, then the Consultant reserves the right to have all of such materials, supplies, merchandise, equipment and so forth furnished with the Consultant's label or as otherwise directed by the Consultant. The Consultant will provide the Owner with a projected list of supplies, materials and equipment, to bear the Consultant's label and to be stocked in the Owner's warehouse for delivery to the Consultant's customers, utilizing the management-consultant phase of the Consultant's business.

"The Consultant guarantees that any excess supplies, material or equipment from the projected list submitted

and labeled with the Consultant's label and proven undeliverable to the Consultant's customer can be returned to the Consultant by the Owner for reimbursement on a cost basis."

In Nernst Lamp Co. v. Conrad, 165 Mich. 604, 131 N.W. 120, (1911), the Michigan Supreme Court refused to permit a Pennsylvania corporation to recover for lamps sold in Michigan because it had not qualified to do business in Michigan. The court stated:

"It is clear that plaintiff corporation, by its receivers, was carrying on its business in this State at the time the contract in question was made.

"Was the business so carried on interstate commerce? The question must be answered by reference to the provisions of the contract, explained and supplemented by the testimony which has been referred to. The contract provides for sales of goods, to be shipped from another state into this state and to be set up, or installed, here. But it does more.

"It contemplates the maintenance, within the state, of an agency of the plaintiff, for the purpose of examining, repairing, and replacing the goods sold, for an indefinite period of time. Such an agency was maintained. It is not the case of a single transaction, within the state, accompanying or merely incidental to the business of selling goods and installing or setting them up for use, but is the case of conducting, within the state, a regular and continuous business in aid and furtherance of the general business of the plaintiff, and the business so carried on, within the state, is not, or was not, interstate in nature. * * *" 165 Mich. at 609, 131 N.W. at 122.

See also Neyens v. Worthington, 150 Mich. 580, 114 N.W. 404, 18 L.R.A.,N.S., 142 (1908).

In Diamond Glue Co. v. United States Glue Co., 187 U.S. 611, 23 S.Ct. 206, 47 L.Ed. 328 (1903), a case in which a corporate plaintiff attempted to avoid the effect of a Wisconsin statute requiring that foreign corporations qualify before doing business in the state, Justice Holmes stated at 187 U.S. 613, 23 S.Ct. 207:

"* * * [The contract] called for a carrying on of business in Wisconsin by the plaintiff at a time when to carry it on without filing a copy of the plaintiff's charter was forbidden by the laws of the state. * * *"

and on page 616, 23 S.Ct. on page 208:

"It is said that the contract in suit, as carried out, was concerned in part with interstate commerce, and therefore was free from the operation of the Wisconsin statute. The portion of the contract that called for the carrying on of business in Wisconsin was not so concerned, and the inseparable provisions as to selling left it to chance or extrinsic business considerations whether the contemplated traffic should go outside the state or not. The foundation of the commerce outside the state was doing business within it. The superintendence and manufacture had to come before the sale. The small requirements of this act before allowing the plaintiff to do business in the state, if good as to that business taken by itself, are not made bad by the presence in the contract of an ulterior term which the plaintiff might or did intend to carry out by transporting the products of the business elsewhere. * * *"

 We hold that plaintiff's activities constituted intrastate commerce.

 Plaintiff's allegation that Contracts A and B were not executed in Michigan and therefore are not subject to M.S.A. 21.96, is unfounded. Contract A according to the deposition of William E. Columbus was executed in Michigan. There is no evidence where Contract B was executed; however, even if it were executed outside of Michigan, we do not believe this would be sufficient to allow plaintiff to sue on it, having failed to comply with M.S.A. 21.94 and M.S.A. 27A.2021.

 All that M.S.A. 21.94 requires in order for it to apply is a finding that a foreign corporation "carried on business" in Michigan. Similarly, M.S.A. 27A.2021 is applicable if there is a finding of an illegal act.

 As another ground for dismissing plaintiff's complaint, defendants contend that contracts, A and B, are void because they violate M.S.A. 28.61, Comp. Laws Mich.1948, § 445.761, which provides:

"All agreements and contracts by which any person, copartnership or corporation promises or agrees not to engage in any avocation, employment, pursuit, trade, profession or business, whether reasonable or unreasonable, partial or general, limited or unlimited, are hereby declared to be against public policy and illegal and void."

On this issue the following provisions of the contracts are relevant:

Contract between corporate defendant and plaintiff, June 1, 1964—Exhibit A:

"3. The Owner shall not operate any general cleaning maintenance and janitorial contract services company without the previous written consent of the Consultant herein and must secure additional contracts with the Consultant on the terms agreeable with the Consultant.

\* \* \* \* \* \*

"15. The Owner agrees that it will not set up any general cleaning maintenance or janitorial contract service, businesses, directly or indirectly, through any member of the stockholders; of officers' families, nor through any other relative or friends, associations, companies, partnerships or otherwise, but the same may be done provided written consent of the Consultant is secured in advance and provided there are additional contracts for consultant services on a basis acceptable to the Consultant.

\* \* \* \* \* \*

"26. The Owner herein and its principal officers agree that in the event there is a termination of this agreement according to the terms thereof, that the Owner and its principal officers and stockholders shall not engage in a similar course of business activity or activities for a period of two (2) years from the date of termination in the area contemplated by this Agreement.

"27. The Owner herein agrees that agreements regulated by the Consultant containing restrictive covenants shall also be obtained by the Owner from any individuals employed by the Owner, by the Owner's present company, or employees and officers of any future company created pursuant to the terms of this agreement, preventing such employees from engaging in a competitive business for a period of two (2) years within the area described in these agreements, said period being from the date of termination of their employment."

Employment contract of Carl Miller, May 15, 1963—Exhibit B:

"7. In consideration of the covenants, agreements and undertakings between both parties as set forth above, and in further consideration of the fact that in the course of his employment with Employer, Employee is in frequent contact with the owners, executives and personnel of the industries, businesses and organizations in and for which Employer provides janitorial services and to which Employer sells janitorial supplies and maintenance chemicals, and in consideration of the fact that through his employment with Employer, Employee becomes familiar with the organizational methods and skills which increase the effectiveness of the janitorial services rendered by Employer, Employee agrees that in the event his employment with Employer is terminated, either voluntarily or because of dismissal or because of circumstances beyond the control of either party, he will not engage in the same business or a similar line of business as that carried on by the Employer, and that he will not work for any individual, firm, or corporation engaged in such line or similar line of business, nor will he in his own

name or in the name of another, either as owner or as agent, employee or servant, solict such business either by himself or through another, nor will he sell janitorial supplies, equipment, or sanitary maintenance chemicals and materials, for a period of two (2) years from and after the date on which he leaves the employment of Employer in the following counties: those counties in which the Employee has been engaged by the Employer for Employer's purposes as related to the business activities of the Employer."

Plaintiff contends M.S.A. 28.61 does not apply to this case because of the exception found in M.S.A. 28.66, Comp. Laws Mich.1948, § 445.766 which provides in part:

"This act shall not apply to any contract mentioned in this act, nor in restraint of trade where the only object of restraint imposed by the contract is to protect the vendee, or transferee, of a trade pursuit, avocation, profession or business, or the good will thereof, sold and transferred for a valuable consideration in good faith, and without any intent to create, build up, establish or maintain a monopoly * * *."

Paragraph 24 of Exhibit A provides in part that:

"In the event that the owner desires to cancel the within contract during any period, the cancellation can be effective only with the written consent of the consultant herein, and provided further that the owner assigns all of its general cleaning maintenance and janitorial contract services to the consultant."

Plaintiff contends that "the owner assign(ing) all of its general cleaning maintenance and janitorial (service contract)" amounts to a transfer of a "trade pursuit, avocation, profession or business, or the good will thereof, and transferred for a valuable consideration in good faith" because the purpose of the assignment provision was to insure that defendants would not terminate before plaintiff had been compensated for the benefits (trade secrets and know-how) it had conferred upon defendants.

We disagree. Paragraph 24 involves only an assignment of janitorial service contracts, not a transfer of a "trade, * * * or business." Moreover, the restrictions against competition are not dependent on whether plaintiff takes over performance of the janitorial service contracts. There is also nothing in Paragraph 24 which would indicate that the defendants would receive any compensation for such an assignment. Therefore, the transfer would not be for a valuable consideration as required by M.S.A. 28.-66.

In E. W. Smith Agency, Inc. v. Sanger, 350 Mich. 75, 85 N.W.2d 84 (1957), the Michigan Supreme Court unanimously refused to enforce a restrictive covenant which would have prohibited the defendant, an insurance salesman, from competing with plaintiff insurance agency, his former employer. To avoid the effect of M.S.A. 28.61, plaintiff argued that M.S.A. 28.66 was controlling because of a provision in the employment contract which gave plaintiff the right to purchase the defendant's rights in expiration, renewal and prospect records arising from insurance sold by him during his employment. The court said:

"On behalf of plaintiff appellee it is insisted that the contract is fairly within the scope of the exceptions in the last quoted section [M.S.A. 28.66]. In substance, it is argued that defendant sold and transferred to plaintiff for a valuable consideration a business of which he was the owner at the time of the transfer, and that the restrictive clause of the contract which plaintiff seeks to enforce was designed to protect it in the carrying on of such business. Counsel for defendant argues that the facts involved in the instant situation are not such as to bring the case within the scope of section 6, that section 1 of the act is applicable, and that the restrictive provision of the contract was void from its inception. It is further pointed out that the plaintiff, in

order to sustain its position, has the burden of proof of establishing that the provision of the contract involved here is within an exception to the general rule.

"It will be noted that the inhibition against defendant competing with plaintiff in the insurance business for a three year period after termination of the employment was a part of the original contract, and was absolute in terms. It was not, in other words, to be contingent in its operation on plaintiff's exercising the right contemplated by the contract and the supplement thereto to acquire defendant's prospective right to commissions accruing after termination of his employment, and such books and records pertaining thereto as defendant might have. Obviously what plaintiff sought to accomplish by incorporating such provision in its contract with defendant, under date of September 25, 1950, was to prevent the latter, following the termination of his employment in the solicitation of business for plaintiff agency, entering into competition with plaintiff in the business that it was operating in Wayne County. We must construe the contract as the parties executed it. Had it been intended that the provision should become operative only in the event that plaintiff sought to exercise the permissive right, above referred to, it is a fair inference that the parties would have so provided. An examination of the instrument suggests that it was prepared with care. Under the facts the conclusion may not be avoided that the inhibition against possible competition as set forth in the original undertaking was at the time in violation of the statute and therefore void. Wedin v. Alterholt, 298 Mich. 142, 298 N.W. 483.

"As above stated, the clause of the contract here involved was absolute in form. However, if, as plaintiff impliedly suggests, it should be regarded as having reference to the exercise of the right of plaintiff to acquire defendant's interests in future commissions, as contemplated by the supplement of August, 1953, to the original agreement, a like conclusion would necessarily follow. It may not be said that the transaction that actually occurred with reference to the assignment of defendant's right to such commissions constituted the sale of a business within the meaning of the exceptions to the general rule of illegality as set forth in the statute. While in the employ of plaintiff, defendant did not have any insurance business of his own, at least so far as this record shows. Under his contract he was working in the carrying on and furtherance of plaintiff's business. When the employment was terminated by mutual consent, he had certain commission rights by virtue of the contract of employment. Apparently what the parties did was to arrange for the transfer of said rights, defendant receiving his money in advance of the accruing of said commissions. Turning over incidental records, if that was done, did not constitute the transaction a sale of a business, nor did the rights under the employment contract which defendant assigned to plaintiff constitute a transaction of such character." 350 Mich. at 80–82, 85 N.W.2d at 86, 87.

■ Finally, the restrictions found in both contracts (A and B) are not divisible or severable, but constitute integral parts of the entire contracts. In his deposition, William E. Columbus, president of Columbus Services, Inc., admitted that one of the purposes of substituting Contract A for the 1963 contract, was to insure that there were restrictions against competition in the event the contract was terminated. (Tr. p. 20.)

Plaintiff's allegation that Count I of its complaint sounds in tort is unfounded. Count I is clearly based on a contract, to-wit, Contract A. There is absolutely no evidence that the defendants acquired knowledge of plaintiff's trade secrets other than in their normal contractual relations with plaintiff during

the time the contracts were in effect. In this respect § 757 of Restatement of Torts (cited in Russell v. Wall Wire Products Co., 346 Mich. 581, 78 N.W.2d 149 (1956)), is relevant.

"*Section 757*. One who discloses or uses another's trade secret, without a privilege to do so, is liable to the other if

"(a) he discovered the secret by improper means, or

"(b) his disclosure or use constitutes a breach of confidence reposed in him by the other in disclosing the secret to him, or

"(c) he learned the secret from a third person * * *, or

"(d) he learned the secret * * * by mistake."

"*Comment (a). Rationale.* The privilege to compete with others (see § 708, volume III) includes a privilege to adopt their business methods, ideas, or processes of manufacture. Were it otherwise, the first person in the field with a new process or idea would have a monopoly which would tend to prevent competition * * *"

" * * * The suggestion that one has a right to exclude others from the use of his trade secret because he has a right of property in the idea has been frequently advanced and rejected. The theory that has prevailed is that the protection is afforded only by a general duty of good faith and that the liability rests upon breach of this duty; that is, breach of contract, abuse of confidence or impropriety in the method of ascertaining the secret. Apart from breach of contract, abuse of confidence or impropriety in the means of procurement, trade secrets may be copied as freely as devices or processes which are not secret * * *"

■ Trade secrets, if any, were communicated to defendants pursuant to an illegal contract. Plaintiff's claim for damages based upon use of those trade secrets is an attempt to enforce an unenforceable contract. Plaintiff shall not obtain indirectly that which it cannot obtain directly. Apart from breach of contract, plaintiff alleges no abuse of confidence or impropriety in the means by which defendants procured trade secrets. Therefore, any claim for damages by reason of alleged use of trade secrets cannot be sustained.

Although Count II sounds in tort it is irrelevant in light of our finding that Contract B is unenforceable.

■ Plaintiff claims that irrespective of whether the contracts are enforceable, it is entitled to compensation because defendants have been unjustly enriched. This claim also fails. Plaintiff was paid its full compensation up to the time Contract A was terminated. It would be inequitable to allow plaintiff to use its illegal and unenforceable contracts as measures of recovery against the defendants, and we so hold.

We find as a matter of law the contracts are unenforceable.

Defendants' motion to dismiss in accordance with Rules 12(b) (6), 12(c) and 56 is hereby granted.